## FELT & TARRANT MFG. CO. v. CORBETT et al.

### No. 1284.

District Court, S. D. California, Central Division.

Jan. 13, 1938.

Thomas R. Dempsey, A. Calder Mackay, Howard W. Reynolds, and Wellman P. Thayer, all of Los Angeles, Cal., for plaintiff.

U. S. Webb, Atty. Gen., State of California, and Walter Bowers, Deputy Atty. Gen., for defendants.

Before STEPHENS, Circuit Judge, and JAMES and HOLLZER, District Judges.

HOLLZER, District Judge.

Plaintiff, an Illinois corporation engaged in the business of manufacturing and selling comptometers in that state for delivery to purchasers residing in various parts of the country, brings this suit to enjoin the enforcement of certain provisions, hereinafter noted, of the Use Tax Act of 1935 of the state of California, St.1935, c. 361, p. 1297, as amended by St.1937, cc. 401, 671, 683, pp. 1327, 1874, 1935. The defendants are members of the Board of Equalization (hereinafter referred to as the board) and the Attorney General of said state.

Section 3 of the statute, as amended by St.1937, p. 1937, under attack provides in part that an excise tax is imposed on the storage, use, or other consumption in the state of tangible personal property purchased from a retailer on or after July 1, 1935, for storage, use, or other consumption in the state at the rate of 3 per cent. of the sales price of such property.

Section 2, subd. (b), of this act, as amended by St.1937, p. 1936, defines the word "use" as including "the exercise of any right or power over tangible personal property incident to the ownership of that property, except that it shall not include the sale of that property in the regular course of business."

Subdivision (f) of the same section defines "retailer" as including "every person engaged in the business of making sales for storage, use or other consumption or in the business of making sales at auction of tangible personal property owned by such person or others for storage, use or other consumption; provided, however, that when in the opinion of the board it is necessary for the efficient administration of this act to regard any salesmen, representatives, peddlers or canvassers as the agents of the dealers, distributors, supervisors or employers under whom they operate or from whom they obtain the tangible personal property sold by them, irrespective of whether they are making sales on their own behalf or on behalf of such dealers, distributors, supervisors or employers, the board may so regard them and may regard the dealers, distributors, supervisors or employers as retailers for purposes of this act."

Section 3 of the same statute prescribes, in part, that every person storing, using, or otherwise consuming in the state tangible personal property purchased from a retailer shall be liable for the tax imposed by the act; provided, however, that a receipt from a retailer maintaining a place of business in the state or a retailer authorized by the board, under such rules and regulations as it may prescribe, to collect the tax imposed and who shall for the purposes of the act be regarded as a retailer maintaining a place of business in the state, given to the purchaser shall suffice to relieve the latter from further liability for the tax.

The act likewise provides that the storage, use, or other consumption in the state of certain kinds of personal property is exempted from the tax, the items thus exempted consisting of property already subject to the California Retail Sales Tax Act of 1933, St.Cal.1933, p. 2599, also motor vehicle fuel already subject to another tax, food products purchased for human consumption, property not subject to state taxation by reason of federal or state law, and certain other items of property which for the purpose of this decision need not be enumerated.

By section 5 of the statute St.Cal.1935, p. 1300, § 5, every retailer selling tangible personal property for storage, use, or other consumption in the state is required to register with the board and furnish certain specified data and such other information as the board may require.

Section 6 of the act, as amended by St. Cal.1937, p. 1938, directs every retailer maintaining a place of business in the state, and making sales of tangible personal property for storage, use, or other consumption in the state not exempted under the law, to collect the tax imposed by the act from the purchaser.

Section 7, as amended by St.1937, p. 1938, directs every retailer maintaining a place of business in the state to file quarterly returns with the board, in such form as the latter may prescribe, showing the total sales price of the property sold, subject to the tax, and also to remit with such return the amount of the tax required to be collected.

Other provisions of the statute fix penalties for failure to pay the tax within the time prescribed, also empower the board to proceed summarily to compute and collect the tax, plus penalties and interest, also to require the retailer to keep records, etc., in such form as the board may prescribe, such records, etc., to be subject to the board's inspection, also prohibit the granting of injunctive relief designed to prevent the collection of the tax and limit the taxpayer to the remedy of paying the tax under protest and thereafter instituting suit for the recovery thereof in a court in the county where the state capitol is located.

The board has adopted various rules to enforce the provisions of the statute. By rule No. 5 it is provided that purchasers of tangible personal property, the storage, use, or other consumption of which is subject to the tax, should at the time of purchase of such property pay the tax to the retailer if the retailer maintains a place of business in this state and should obtain a receipt therefor from the retailer.

Rule No. 6 declares " 'Place of business' means an office or other premises regularly used by a retailer for the transaction of business. Any person making sales of tangible personal property for storage, use or other consumption in this State maintains a place of business here if orders are solicited in this State by his agents or representatives occupying an office or other premises in this State regardless of whether such place of business is maintained under the name of such person or under the names of his agents or representatives."

Plaintiff's method of doing business with respect to California purchasers is substan-

tially as follows: Pursuant to a separate contract made with each, the exclusive right to solicit orders in California is granted to two general agents, each of whom is allotted a separate section of the state. Under this contract the only compensation paid to a general agent consists of commissions on sales made. Each general agent may employ subagents and also a demonstrator for the purpose of demonstrating and instructing respecting the comptometers, provided such employment is approved by plaintiff. Likewise, plaintiff agrees by this contract to pay the rent of an office for each general agent, provided the lease to the same has been approved by it, such office to be used exclusively in furthering its business; also agrees to pay part of the traveling. expenses incurred by each general agent, his subagents and demonstrators while traveling on business trips authorized by plaintiff, and also to reimburse each general agent to the extent of part of the moneys advanced to a subagent and, in addition, in the amount of $40 per month toward the salary of a demonstrator. Plaintiff assumes no other financial obligation with respect to subagents and demonstrators. Under this contract the general agent must devote his entire time and attention to soliciting orders for plaintiff. All orders taken must be submitted to and approved by plaintiff, all sales and deliveries must be made by, and all bills for such orders as are accepted must be rendered by, the plaintiff. The general agent is prohibited from making collections and all payments must be made directly to plaintiff. The contract further requires the general agent to maintain certain records, and make certain reports and make a specified minimum number of calls on prospective customers.

The complaint further alleges that each of these two general agents maintains an office in this state, the lease to such office designating the plaintiff as lessee therein, the rent for the same being paid by plain-. tiff, while all other expenses of maintaining such office are paid by the general agent. As soon as an order is accepted, a particular machine is appropriated for that purpose in plaintiff's shipping department in Illinois. All machines sold for delivery in California are shipped from one of plaintiff's distributing points outside of the state. Sometimes machines are forwarded directly to the purchasers, while in other instances, in order to secure reduced freight charges, large groups of machines are shipped to the general agent who makes delivery to the respective purchasers. The only machines kept by plaintiff in California are those used as demonstrators. Plaintiff has never qualified to do intrastate business in California.

It further appears from the complaint that plaintiff has not collected any of the tax prescribed by the statute in question and has not filed any returns with the board. It is further alleged that the defendants claim that there is due and owing by plaintiff to the state an amount equal to the tax imposed by said act on all machines sold by plaintiff for delivery in California during the period extending from July 1, 1935, to June 30, 1936, to wit, the sum of $4,457.42, plus interest amounting to $435.42, plus a penalty in the sum of $445.74. It is also alleged that defendants intend and threaten to and, unless restrained by order of court, will cause to be instituted summary proceedings to compel payment of the aforementioned sums; that defendants threaten to cause summary process to be issued for seizure and sale of plaintiff's property used by it solely in interstate commerce; also that defendants threaten to and will bring repeated suits against plaintiff for further amounts representing taxes which defendants claim plaintiff was required to collect from its California purchasers on sales made subsequently to June 30, 1936, together with penalties and interest thereon, thereby subjecting plaintiff to a multiplicity of suits and harassing litigation.

The complaint further alleges that the defendants demand that plaintiff register with said board, also maintain various records and make reports to the board from time to time and permit its records to be inspected by the board's representatives. All of these threatened acts, unless restrained, it is alleged will cause plaintiff irreparable damage and loss.

While the complaint discloses that the suit is between citizens of different states, jurisdiction is based primarily upon the charge that application of the statute in question to plaintiff violates article 1, § 8, cl. 3, also article 1, § 10, cl. 2, of the Fourteenth Amendment of the Constitution of the United States, in that it is claimed that the requirements of the act constitute a regulation and a direct burden upon plaintiff's interstate commerce and that they deprive plaintiff of its property without due process of law. In addition, the com-

plaint alleges that the application of the act to plaintiff is in violation of article 1, §§ 3 and 13, of the Constitution of the state of California.

A temporary restraining order and an order to show cause why an interlocutory injunction should not be granted having been issued, the defendants on the return day filed a motion to dismiss and also a return denying some of the material allegations of the bill. Following an oral argument, the application for an interlocutory injunction and the motion to dismiss were ordered submitted.

■ The preliminary contention advanced by defendants to the effect that this suit in effect is a proceeding against the state and therefore the court lacks jurisdiction to entertain the same is disposed of by the rule announced in Sterling v. Constantin, 287 U.S. 378, 53 S.Ct. 190, 193, 77 L.Ed. 375. In the latter case suit was instituted against the Governor and certain military officials of Texas to secure an injunction restraining them from enforcing certain military and executive orders regulating or restricting the production of oil from plaintiff's wells. In denying a similar objection as to alleged lack of jurisdiction, the court there said, 287 U.S. 378, at page 393, 53 S.Ct. 190, 193, 77 L.Ed. 375:

"The District Court had jurisdiction. The suit is not against the state. The applicable principle is that, where state officials, purporting to act under state authority, invade rights secured by the Federal Constitution, they are subject to the process of the federal courts in order that the persons injured may have appropriate relief. [Citing cases.] The Governor of the state, in this respect, is in no different position from that of other state officials. [Citing cases.] Nor does the fact that it may appear that the state officer in such a case, while acting under color of state law, has exceeded the authority conferred by the state, deprive the court of jurisdiction. [Citing cases.]"

■ The principal defense interposed herein is, in substance, that the statute under attack imposes a tax, not upon personal property while it is in transit in interstate commerce nor upon the sale thereof, but upon the privilege of use of such property after commerce is at an end, and hence the tax is not upon the operations of interstate commerce, and does not burden the same. In support of their position the defendants rely mainly on the decision rendered in Monamotor Oil Co. v. Johnson, 292 U.S. 86, 54 S.Ct. 575, 577, 76 L. Ed. 1141. In that case suit was filed to enjoin certain officers of the state of Iowa from enforcing the provisions of the laws of that state laying a tax on motor vehicle fuel. These laws declared it to be illegal to conduct the business of a distributor of such product unless a certificate giving certain information be filed with the State Treasurer and a license be procured permitting the conduct of such business, and further requires the distributor to file monthly reports with the State Treasurer showing the total number of gallons imported by him during the preceding month, with certain further details, and at the same time requiring him to remit to the Treasurer the amount of the tax. In addition, these laws defined "distributor" as "any person who brings into the state or who produces, refines, manufactures or compounds within the state any motor vehicle fuel to be used within the state or sold or otherwise disposed of by him within the state for use in the state." Likewise these laws prescribed a penalty for failure to remit the amount of the tax, also empowered the Attorney General to bring action to recover the same, authorized the State Treasurer to revoke the license of a distributor failing to comply with certain provisions, required distributors to permit inspection of their records, etc., and made it a misdemeanor for a distributor to violate any of the provisions hereinbefore mentioned.

In the case last cited the plaintiff was an Arizona corporation engaged in the business of buying, manufacturing, blending, and selling gasoline and kindred products, including the importation into Iowa of gasoline by tank cars and other containers for resale to consumers and to dealers selling to consumers, and the exportation of gasoline to other states, and also in the business of maintaining storage facilities in Iowa, from which deliveries were made in that and other states, also maintaining a refinery from which gasoline was shipped to points in Iowa and other states, and also maintaining service stations in that state which sold to consumers.

In affirming the ruling of the District Court dismissing the suit, the Supreme

Court in the course of its opinion declared:

"There is no substance in the claim that the statutes impose a burden upon interstate commerce, contrary to the prohibition of article 1, section 8, cl. 3, of the Federal Constitution. The appellant insists that the tax is a direct tax on motor vehicle fuel imported. The court below concluded that the law laid an excise upon the use of fuel for the propulsion of vehicles on the highways of the state. The state officials have administered the tax on this theory. We think this the correct view. The levy is not on property but upon a specified use of property. [Citing cases.] It is not laid upon the importer for the privilege of importing [Citing cases], but falls on the local use after interstate commerce has ended. [Citing cases.] The statute in terms imposes the tax on motor vehicle fuel used or otherwise disposed of in the state. Instead of collecting the tax from the user through its own officers, the state makes the distributor its agent for that purpose. This is a common and entirely lawful arrangement. [Citing cases.] The distributor who reports the gasoline and pays the tax is required to pass the burden on to the consumer, who is advised that in addition to the price of the gasoline he is paying a license fee to the state. To prevent evasion the distributor must pay and pass on the tax on all gasoline imported or distributed, irrespective of its ultimate use. * * * Since the law declares that the levy is only upon use of motor vehicle fuel in the state, and the intent is not to affect interstate commerce, the state treasurer properly permits distributors to deduct as a credit * * * that which has been exported from the state by the distributor. * * * The statute obviously was not intended to reach transactions in interstate commerce, but to tax the use of motor fuel after it had come to rest in Iowa, and the requirement that the appellant as the shipper into Iowa shall, as agent of the state, report and pay the tax on the gasoline thus coming into the state for use by others on whom the tax falls imposes no unconstitutional burden either upon interstate commerce or upon the appellant.

"The method of imposition and collection of the tax does not deny the equal protection of the laws guaranteed by the Fourteenth Amendment. * * * The short answer to the contention is that the statutes properly construed lay no tax whatever upon distributors, but make of them mere collectors from users of motor vehicle fuel, and refund the tax only to that class of users upon whom no excise is intended to be laid. The distributor does not pay the tax; the user does."

In a more recent decision, Henneford v. Silas Mason Co., 300 U.S. 577, 57 S. Ct. 524, 526, 81 L.Ed. 814, the Supreme Court, upholding the validity of certain legislation enacted by the state of Washington, consisting of a statute levying a tax on retail sales and a statute imposing a compensating tax upon the privilege of using personal property in the state, declared:

"The practical effect of a system thus conditioned is readily perceived. One of its effects must be that retail sellers in Washington will be helped to compete upon terms of equality with retail dealers in other states who are exempt from a sales tax or any corresponding burden. Another effect, or at least another tendency, must be to avoid the likelihood of a drain upon the revenues of the state, buyers being no longer tempted to place their orders in other states in the effort to escape payment of the tax on local sales. Do these consequences which must have been foreseen, necessitate a holding that the tax upon the use is either a tax upon the operations of interstate commerce or a discrimination against such commerce obstructing or burdening it unlawfully?

"The tax is not upon the operations of interstate commerce, but upon the privilege of use after commerce is at an end. Things acquired or transported in interstate commerce may be subjected to a property tax, nondiscriminatory in its operation, when they have become part of the common mass of property within the state of destination. [Citing cases.] This is so, indeed, though they are still in the original packages. [Citing cases.] For like reasons they may be subjected, when once they are at rest, to a nondiscriminatory tax upon use or enjoyment [citing cases, including Monamotor Oil Co. v. Johnson, 292 U.S. 86, 93, 54 S.Ct. 575, 76 L.Ed. 1141.] * * * A tax upon the privilege of use or storage when the chattel used or stored has ceased to be in transit is now an impost so common that its validity has been withdrawn from the arena of debate. [Citing cases.]"

In Bowman v. Continental Oil Co., 256 U.S. 642, 41 S.Ct. 606, 609, 65 L.Ed. 1139, while sustaining a decree enjoining the enforcement of a license tax levied against concerns engaged in the business of importing oil and gasoline products from other states and distributing the same in New Mexico, and also enjoining the enforcement of an excise tax upon the sale of such property in that state in the original form and condition as when imported (but not upon the sale of such products in broken packages), the Supreme Court held that such decree should be "without prejudice to the right of the state, through appellants or other officers, to require plaintiff to render detailed statements of all gasoline received, sold, or used by it, whether in interstate commerce or not, to the end that the state may the more readily enforce said excise tax to the extent that it has lawful power to enforce it as above stated."

These decisions make it clear that a state law, such as the one here under attack, in so far as it imposes a use tax upon personal property after the same has been brought into the state, does not violate either the commerce clause or the Fourteenth Amendment of the Federal Constitution.

Accordingly, there remains for consideration only the question whether the state may require the seller to collect such tax and in connection therewith require the latter to conform to certain regulations in order to insure the collection of the tax.

We think this question must be answered in the affirmative. In this respect, we are unable to distinguish the statute here involved from the one upheld in the case of Monamotor Oil Co. v. Johnson, 292 U.S. 86, 54 S.Ct. 575, 76 L.Ed. 1141. Nor are we able to perceive wherein the plaintiff's method of selling its comptometers to California purchasers entitles it to exemption from the application of this statute. The allegations of the bill respecting this phase of the case fully warrant the conclusion that plaintiff's method of doing business includes maintaining at least two places of business in California.

For the reasons herein set forth, we conclude that this action must be dismissed and it is so ordered.

STEPHENS, Circuit Judge, and JAMES, District Judge, concur.