SEARS ROEBUCK AND COMPANY, Appellee, v. LOUIS E. RODDEWIG et al., Appellants.

No. 44997.

MAY 14, 1940.

FEBRUARY 17, 1941.

Gamble, Read, Howland & Rosenfield, for appellee.

Fred D. Everett, Attorney General, and John E. Mulroney, Assistant Attorney General, for appellants.

MILLER, J.—The plaintiff's petition asserts that it is a

nonresident corporation licensed to do business in the state of Iowa. Pursuant to such license, it has established and is now conducting various retail stores in Iowa which constitute a substantial investment on its part. It has reported to and paid the State Board of Assessment and Review the amount of tax due on all sales made in Iowa through the operation of such retail stores. In addition to the business conducted in Iowa, it has for many years and is now conducting a mail-order business through mail-order stores or establishments, all of which are located outside of Iowa. The orders from customers in Iowa are sent to such stores by mail, are there filled, and the merchandise shipped to the purchasers in Iowa. Plaintiff has not collected nor paid a use tax on such mail-order sales made outside of Iowa to customers residing in Iowa. There are numerous firms who maintain no place of business in Iowa who conduct a mail-order business with residents of Iowa in competition with plaintiff, who are not required to and do not collect the use tax on sales made by them. The defendants, acting as the State Board of Assessment and Review, construed the statute as authorizing and empowering them to require plaintiff to collect the use tax on mail-order sales made and consummated outside of Iowa with customers located in Iowa. The board adopted a resolution, threatening to cancel plaintiff's license as a retailer and its permit to do business in Iowa for failure to collect and pay the use tax on mail-order sales made outside of Iowa to residents of Iowa.

Plaintiff asserted that the statute, in so far as it purports to authorize such procedure by the board, is unconstitutional in violation of sections 8 and 10 of Article I of the United States Constitution, and section 1 of the 14th Amendment to such Constitution, and is also an attempt on the part of the state of Iowa to make its laws operate extraterritorially. Plaintiff prayed that the board be enjoined from finding that it has failed to comply with the use tax law and from taking any steps to secure the cancellation of its license as a retailer or its permit to do business in Iowa, and for general equitable relief.

A hearing was had and the court granted a temporary

injunction restraining the defendants from making any finding that plaintiff had failed to comply with the provisions of the use tax law, or taking any steps to secure the revocation of plaintiff's license as a retailer or permit to do business as a nonresident corporation.

The defendants filed an answer admitting all allegations of the petition not specifically denied, modified or qualified. Defendants asserted that the state has the power and authority to adopt the use tax law and make it applicable to plaintiff's mail-order business as a condition to its right to continue to do business in Iowa. Various allegations of the petition are denied. The effect of the answer, however, was primarily to put in issue the constitutional questions presented by the allegations of the petition.

At the trial, it was stipulated that the plaintiff, in the conducting of its business, made sales of tangible personal property to residents or persons within the state of Iowa, by three methods, referred to as types. Type 1 involves sales made in its retail stores located in Iowa, which sales are subject to the Iowa sales tax. Type 2 involves special order sales wherein the purchaser orders from one of the plaintiff's retail stores in Iowa tangible property not carried in stock by the store, but carried by one of the mail-order establishments located outside of Iowa; the order is given to the local store with the purchase price, which includes transportation charges; the store orders the shipment to be made direct to the purchaser from a mail-order establishment, where the order is filled charging the local store with the cost price, plus overhead and transportation charges; the purchase price paid to and received by the local store is retained by it and included in the volume of its gross sales. Type 3 involves mail-order sales. A person or resident of Iowa prepares his order, or has it prepared for him, sends it to one of plaintiff's mail-order establishments located outside of Iowa, with a remittance of the purchase price, plus transportation charges, specifying the means of transportation; the order is accepted or refused

at the mail-order establishment; if accepted, the order is filled by direct shipment to the purchaser through the United States mail, or some common carrier specified by the purchaser.

It was stipulated for the purposes of this case that plaintiff is obligated to collect and has collected and paid the tax imposed upon all sales made by it to residents of Iowa classified as Types 1 and 2, but that as to Type 3 mail-order sales, it failed and refused to collect the use tax imposed by the use tax act.

There was testimony as to the activities of various competitors of plaintiff, engaged in mail-order business without maintaining any place of business in Iowa. There was also testimony regarding the difficulty of collecting a use tax on mail-order sales made to persons in Iowa through the mail-order establishments of plaintiff located outside of Iowa. We do not undertake to review this testimony because we do not think it has any substantial bearing upon the questions to be decided by us.

The court held that the use tax law, insofar as it purports to authorize the defendants to insist upon plaintiff collecting and paying the use tax on mail-order sales made to persons in Iowa through the mail-order establishments located outside of Iowa, is unconstitutional and void, being contrary to section 8 of Article I of the Constitution of the United States, and section 1 of the 14th Amendment thereto. A permanent injunction was granted restraining defendants from making any finding that plaintiff has failed to comply with the provisions of the Iowa use tax law or taking any action to secure the revocation or cancellation of its sales permit covering the operation of its retail stores in Iowa or its license to do business as a foreign corporation in this state. From this decree defendants have appealed.

The statute involved herein was enacted as chapter 198 of the Acts of the Forty-seventh General Assembly. Some amendments were adopted by chapters 175 and 182 of the Acts of the Forty-eighth General Assembly. The statute, as amended, appears as chapter 329.4 of the Code, 1939. The

1278

amendments do not appear to materially affect the questions presented by this litigation, and we will refer to the statute as it appears in the Code, 1939.

Section 8 of the Act (section 6943.109 of the Code, 1939) provides that every retailer maintaining a place of business in this state and making sales of tangible property for use in this state, not exempt under section 6943.104, exempting sales on which the sales tax is paid or by section 6943.107, having reference to motor vehicles, "shall at the time of making such sales, whether within or without the state, collect the tax imposed by this chapter from the purchaser." Section 11 of the Act (section 6943.112 of the Code) provides that the tax, required to be collected by the retailer and any tax collected by the retailer pursuant to said section, shall constitute a debt owed by the retailer to the state. Section 21 of the Act (section 6943.122 of the Code) provides that, whenever the retailer maintaining a place of business in this state is a corporation authorized to do business in this state and fails to comply with the provisions of the chapter, a certificate may be made to the secretary of state of a finding that such retailer has failed to comply with such provisions, and the secretary of state shall, upon receipt of such certificate, revoke the permit authorizing the corporation to do business in this state, and shall issue a new permit only when the corporation shall have obtained an order finding that it has complied with its obligations under the chapter.

The question presented is whether section 6943.109, requiring plaintiff to collect the tax on mail-order sales made without the state, is constitutional when considered with the provision that, under section 6943.112, the tax, collected or required to be collected, is a debt of plaintiff and, upon a finding that plaintiff has failed to pay such debt, under section 6943.122, plaintiff's permit to do business as a foreign corporation in this state must be revoked. We are of the opinion that the court correctly held that the provisions of the chapter, as applied to the mail order sales shown by the record herein, are unconstitutional and, therefore, void.

■ If the plaintiff limited its activities to conducting a mail-order business such as shown by the record herein, it would not be doing business in this state and the state could not require it to secure a license to do business here. Ryerson & Son v. Schraag, 211 Iowa 558, 561 to 563, 229 N. W. 733; Anderson Bros. v. Sioux Monument Co., 210 Iowa 1226, 1231, 232 N. W. 689. With plaintiff's activities so limited, it would not be conducting a retail business in Iowa and, therefore, would not be subject to the requirements of section 6943.109. Defendants contend, however, that, when plaintiff undertakes to do a retail business here, under a permit issued by the secretary of state, the state has the right to attach, as a condition to plaintiff's right to do business here, a requirement that it collect the use tax on sales made outside of Iowa, as to which sales plaintiff otherwise would have no obligation to this state. The court found otherwise, and correctly so.

■ Defendants contend that the tax is a tax upon the use of property in this state, is really a tax upon the purchaser and is not a tax upon the plaintiff at all. Perhaps from a subtle and technical standpoint this may be true, but, if true, it is unimportant. Section 6943.109 requires that the tax be collected when the sale is made. Under the facts herein, the property is then without the state. Section 6943.112 makes the amount of the tax a debt owed by plaintiff and section 6943.122 provides that a failure to pay that debt shall constitute proper grounds for revoking plaintiff's permit to do business in this state. From any reasonable or practical standpoint, the amount of the tax being made a debt of plaintiff, the statute at least constitutes regulation of plaintiff's activities outside the state as a condition to it being granted a license to do business in the state. This cannot be done.

In the case of Connecticut General Life Ins. Co. v. Johnson, 303 U. S. 77, 80, 58 S. Ct. 436, 438, 82 L. Ed. 673, the court, through Justice Stone, states:

"But the limits of the state's legislative jurisdiction to tax, prescribed by the Fourteenth Amendment, are to be ascer-

tained by reference to the incidence of the tax upon its objects rather than the ultimate thrust of the economic benefits and burdens of transactions within the state. As a matter of convenience and certainty, and to secure a practically just operation of the constitutional prohibition, we look to the state power to control the objects of the tax as marking the boundaries of the power to lay it. Hence it is that a state which controls the property and activities within its boundaries of a foreign corporation admitted to do business there may tax them. But the due process clause denies to the state power to tax or regulate the corporation's property and activities elsewhere. Union Refrigerator Transit Co. v. Kentucky, 199 U. S. 194 [26 S. Ct. 36, 50 L. Ed. 150, 4 Ann. Cas. 493]; New York Life Insurance Co. v. Head, 234 U. S. 149 [34 S. Ct. 879, 58 L. Ed. 1259]; New York Life Insurance Co. v. Dodge, 246 U. S. 357 [38 S. Ct. 337, 62 L. Ed. 772, Ann. Cas. 1918E, 593]; St. Louis Compress Co. v. Arkansas, 260 U. S. 346 [43 S. Ct. 125, 67 L. Ed. 297]; Compania General de Tabacos v. Collector, 275 U. S. 87 [48 S. Ct. 100, 72 L. Ed. 177]; Home Insurance Co. v. Dick, 281 U. S. 397 [50 S. Ct. 338, 74 L. Ed. 926, 74 A. L. R. 701]; Hartford Accident & Indemnity Co. v. Delta & Pine Land Co., 292 U. S. 143 [54 S. Ct. 634, 78 L. Ed. 1178, 92 A. L. R. 928]; Boseman v. Connecticut General Life Ins. Co., 301 U. S. 196 [57 S. Ct. 686, 81 L. Ed. 1036, 110 A. L. R. 732]; People ex rel. Sea Insurance Co. v. Graves, 274 N. Y. 312, 8 N. E. (2d) 872."

In the case of Union Refrigerator Transit Co. v. Kentucky, 199 U. S. 194, 204, 26 S. Ct. 36, 37, 50 L. Ed. 150, 4 Ann. Cas. 493, the court states:

"It is also essential to the validity of a tax that the property shall be within the territorial jurisdiction of the taxing power. Not only is the operation of state laws limited to persons and property within the boundaries of the State, but property which is wholly and exclusively within the jurisdiction of another State receives none of the protection for which the tax is supposed to be the compensation."

In the case of New York Life Ins. Co. v. Dodge, 246 U. S. 357, 375, 38 S. Ct. 337, 340, 62 L. Ed. 772, Ann. Cas. 1918E, 593, the court states:

"Assuming the policy to be a Missouri contract, we declared that State without power to extend its authority over citizens of New Mexico and into New York and forbid the later agreement there made simply because it modified the first one. We said: 'It would be impossible to permit the statutes of Missouri to operate beyond the jurisdiction of that State and in the State of New York and there destroy freedom of contract without throwing down the constitutional barriers by which all the States are restricted within the orbits of their lawful authority and upon the preservation of which the Government, under the Constitution, depends.''

In the case of New York Life Ins. Co. v. Head, 234 U. S. 149, 164, 34 S. Ct. 879, 883, 58 L. Ed. 1259, the court, through Chief Justice White, states:

"It is true it has been held that in view of the power of a State over insurance, it might, as the condition of a license given to a foreign insurance company to do business within its borders, impose a condition as to business within the State, which otherwise but for the complete power to exclude would be held repugnant to the Constitution. In other words that a company having otherwise no right whatever for any purpose to go in without a license would not be heard after accepting the same to complain of exactions upon which the license was conditioned as unconstitutional because of its voluntary submission to the same. But even if it be put out of view that this doctrine has been either expressly or by necessary implication overruled or at all events so restricted as to deprive it of all application to this case (see Harrison v. St. L. & San Francisco R. Co., 232 U. S. 318, 332 [34 Sup. Ct. 333, 58 L. Ed. 621, 626, L. R. A. 1915F, 1187] and authorities there cited,) it here can have no possible application since such doctrine at best but recognized the power of a State under the circumstances stated to impose

conditions upon the right to do the business embraced by the license and therefore gives no support to the contention here presented which is that a State by a license may acquire the right to exert an authority beyond its borders which it cannot exercise consistently with the Constitution. But the Constitution and its limitations are the safeguards of all the States preventing any and all of them under the guise of license or otherwise from exercising powers not possessed.''

In the case of Home Ins. Co. v. Dick, 281 U. S. 397, 407, 50 S. Ct. 338, 341, 74 L. Ed. 926, 74 A. L. R. 701, the court, through Justice Brandeis, states:

''Second. The Texas statute as here construed and applied deprives the garnishees of property without due process of law. A State may, of course, prohibit and declare invalid the making of certain contracts within its borders. Ordinarily, it may prohibit performance within its borders, even of contracts validly made elsewhere, if they are required to be performed within the State and their performance would violate its laws. But, in the case at bar, nothing in any way relating to the policy sued on, or to the contracts of reinsurance, was ever done or required to be done in Texas. All acts relating to the making of the policy were done in Mexico. All in relation to the making of the contracts of reinsurance were done there or in New York. And, likewise, all things in regard to performance were to be done outside of Texas. Neither the Texas laws nor the Texas courts were invoked for any purpose, except by Dick in the bringing of this suit. The fact that Dick's permanent residence was in Texas is without significance. At all times here material, he was physically present and acting in Mexico. Texas was, therefore, without power to affect the terms of contracts so made. Its attempt to impose a greater obligation than that agreed upon and to seize property in payment of the imposed obligation violates the guaranty against deprivation of property without due process of law. Compania General de Tabacos v. Collector of Internal Revenue, 275 U. S. 87 [48 Sup. Ct. 100, 72 L. Ed. 177]; Aetna Life Ins. Co. v.

Dunken, 266 U. S. 389 [45 Sup. Ct. 129, 69 L. Ed. 342]; New York Life Ins. Co. v. Dodge, 246 U. S. 357 [38 Sup. Ct. 337, 62 L. Ed. 772, Ann. Cas. 1918E, 593].''

In the case of Hartford Accident & Indemnity Co. v. Delta & Pine Land Co., 292 U. S. 143, 149, 54 S. Ct. 634, 636, 78 L. Ed. 1178, 92 A. L. R. 928, the court, through Justice Roberts, states:

''The Mississippi statutes, so construed, deprive the appellant of due process of law. A state may limit or prohibit the making of certain contracts within its own territory (Hooper v. California, 155 U. S. 648 [15 S. Ct. 207, 39 L. Ed. 297, 5 I. C. C. 610]; Orient Insurance Co. v. Daggs, 172 U. S. 557; 565-6 [19 S. Ct. 281, 43 L. Ed. 552, 555, 556]; New York Life Ins. Co. v. Cravens, 178 U. S. 389, 398-9 [20 S. Ct. 962, 44 L. Ed. 1116, 1123, 1124]); but it cannot extend the effect of its laws beyond its borders so as to destroy or impair the right of citizens of other states to make a contract not operative within its jurisdiction, and lawful where made. New York Life Ins. Co. v. Head, 234 U. S. 149 [34 S. Ct. 879, 58 L. Ed. 1259]; Aetna Life Ins. Co. v. Dunken, 266 U. S. 389, 399 [45 S. Ct. 129, 69 L. Ed. 342, 349]. Nor may it in an action based upon such a contract enlarge the obligations of the parties to accord with every local statutory policy solely upon the ground that one of the parties is its own citizen. Home Insurance Co. v. Dick, 281 U. S. 397, 407-8 [50 S. Ct. 338, 74 L. Ed. 926, 933, 934, 74 A. L. R. 701].''

In the case of St. Louis Cotton Compress Co. v. Arkansas, 260 U. S. 346, 349, 43 S. Ct. 125, 67 L. Ed. 297, the court, through Justice Holmes, states:

''It is true that the State may regulate the activities of foreign corporations within the state, but it cannot regulate or interfere with what they do outside.''

In the case of James v. Dravo Contracting Co., 302 U. S.

134, 139, 58 S. Ct. 208, 211, 82 L. Ed. 155, the court, through Chief Justice Hughes, states:

"It is clear that West Virginia had no jurisdiction to lay a tax upon respondent, with respect to this work done in Pennsylvania. As to the material and equipment there fabricated, the business and activities of respondent in West Virginia consisted of the installation at the respective sites within that State and an apportionment would in any event be necessary to limit the tax accordingly. Hans Rees' Sons v. North Carolina [283 U. S. 123, 51 S. Ct. 385, 75 L. Ed. 879], supra."

In the case of Baldwin v. Seelig, 294 U. S. 511, 521, 55 S. Ct. 497, 499, 79 L. Ed. 1032, 101 A. L. R. 55, the court, through Justice Cardozo, states:

"New York has no power to project its legislation into Vermont by regulating the price to be paid in that state for milk acquired there. So much is not disputed. New York is equally without power to prohibit the introduction within her territory of milk of wholesome quality acquired in Vermont, whether at high prices or at low ones. This again is not disputed. Accepting those postulates, New York asserts her power to outlaw milk so introduced by prohibiting its sale thereafter if the price that has been paid for it to the farmers of Vermont is less than would be owing in like circumstances to farmers in New York. The importer in that view may keep his milk or drink it, but sell it he may not.

"Such a power, if exerted, will set a barrier to traffic between one state and another as effective as if customs duties, equal to the price differential, had been laid upon the thing transported. * * *

"If New York, in order to promote the economic welfare of her farmers, may guard them against competition with the cheaper prices of Vermont, the door has been opened to rivalries and reprisals that were meant to be averted by subjecting commerce between the states to the power of the nation."

Other cases might be cited and quoted from. To do so

would unduly prolong this opinion. The foregoing, in our judgment, demonstrate that the position taken by the supreme court of the United States in construing the constitution is such that the decree herein must be affirmed. The state of Iowa has the right to control and tax the property and activities of the plaintiff within its boundaries. It may also control and tax such property and activities as a condition to permitting plaintiff to do business as a foreign corporation here. But it has no power to regulate plaintiff's activities outside this state, nor has it the power to regulate such activities as a condition to plaintiff's right to continue to do business here.

The only activities of plaintiff involved herein are the sales made pursuant to its mail-order business. As to all other activities, for the purposes of this case, plaintiff concedes that the tax must be paid and it has been collected and paid. The mail-order sales, however, do not constitute activities within the state of Iowa, nor do such sales constitute doing business within the state. The sales are consummated outside the state of Iowa in each instance. They are separate and distinct from plaintiff's activities in Iowa. The statute here challenged seeks to impose upon plaintiff the obligation that it "shall at the time of making such sales, whether within or without the state, collect the tax imposed by this chapter from the purchaser." The sales are made outside of Iowa and the statute requires plaintiff to collect the tax at the time the sales are made. It clearly seeks to regulate activities of plaintiff outside the state . Under the provisions of section 6943.122, defendants seek to cancel plaintiff's license as a retailer in this state and its permit to do business here as a foreign corporation for failure to pay a debt which constitutes a regulation of its activities outside of Iowa. Under repeated pronouncements of the supreme court of the United States, hereinbefore reviewed and quoted from, the state of Iowa has no such right. The court correctly so held.

Defendants contend, however, that recent decisions of the supreme court of the United States demonstrate that the precedents herein reviewed and followed have been overruled and are no longer to be considered interpretations of the constitu-

tion of the United States. We are unable to agree with such contentions.

The case of Monamotor Oil Co. v. Johnson, 292 U. S. 86, 54 S. Ct. 575, 78 L. Ed. 1141, involved the collection of a use tax in Iowa. However, the fact situation was very different from that presented by the record herein. At page 90 of 292 U. S., page 577 of 54 S. Ct., 78 L. Ed. 1141, Justice Roberts states the facts as follows:

"The appellant is an Arizona corporation whose business is the buying, manufacturing, blending and selling of gasoline and kindred products, including the importation into Iowa of gasoline by tank cars, trucks and other containers, for resale to consumers and to dealers who sell to consumers, and the exportation of gasoline to other states; the maintenance of storage facilities in Iowa, from which deliveries are made in that and other states, and the maintenance of a refinery at Carter Lake, Iowa, where gasoline is blended and compounded and shipped to points in Iowa and other states. Prior to April, 1932, gasoline was refined at this plant. The corporation maintains numerous service stations in Iowa which sell to consumers."

It will be noted from the above statement of facts that the use tax which the appellant was required to collect pertained to gasoline and kindred products sold and delivered by it in connection with its activities within the state of Iowa. The question presented for our consideration was not involved in that decision.

The case of Wiloil Corp. v. Pennsylvania, 294 U. S. 169, 55 S. Ct. 358, 79 L. Ed. 838, was similar to the Monamotor Oil Co. case. The facts involved in that case are stated by Justice Butler, at page 172 of 294 U. S., page 359 of 55 S. Ct., 79 L. Ed. 838, as follows:

"Appellant, a Pennsylvania corporation having its principal place of business in Pittsburgh, sells liquid fuels at wholesale and is a distributor as defined by the act. The tax in controversy was laid at three cents per gallon upon the contents of

13 tank cars sold and delivered by it. All were ordered through its agent in Philadelphia for delivery to purchasers at that city or at Essington, Pennsylvania. The order specified a price per gallon 'f. o. b. Wilmington, Del., plus 3¢ tax,' and were subject to, and received, appellant's approval at its office in Pittsburgh.''

· From the foregoing quotation, it will be noted that the tax involved in that case pertained to activities of appellant within the state of Pennsylvania.

The case of Great Atlantic & Pacific Tea Co. v. Grosjean, 301 U. S: 412, 57 S. Ct. 772, 81 L. Ed. 1193; 112 A. L. R. 293, involved a tax upon chain stores located in and operated by the Great Atlantic & Pacific Tea Company in the state of Louisiana. The property was located in and the activities were conducted in the taxing state.

The case of Felt & Tarrant Mfg. Co. v. Gallagher, 306 U. S. 62, 65, 59 S. Ct. 376, 377, 83 L. Ed. 488, involved the collection of a use tax on property sold by the appellant through its general agents, who were doing business in the state of California. In setting forth the facts, Justice McReynolds quotes from the statement made by the lower court in 23 F. Supp. 186, as follows:

'' 'That each of these two general agents maintains an office in this state, the lease to such office designating the plaintiff as lessee therein, the rent for the same being paid by plaintiff, while all other expenses of maintaining such office are paid by the general agent. As soon as an order is accepted a particular machine is appropriated for that purpose in plaintiff's shipping department in Illinois. All machines sold for delivery in California are shipped from one of plaintiff's distributing points outside of the State. Sometimes machines are forwarded directly to the purchasers, while in other instances, in order to secure reduced freight charges, large groups of machines are shipped to the general agent who makes delivery to the respective purchasers.' ''

It will be noted from the above quotation that the sales involved were solicited by agents in California, and in many instances the deliveries were made by the same agent in California. The tax, therefore, pertained to activities of the appellant through its general agents and their subagents, who were undertaking to do business for appellant in the state of California.

The case of Henneford v. Silas Mason Co., 300 U. S. 577, 57 S. Ct. 524, 81 L. Ed. 814, did not involve the vendor of personal property at all. It sustained a tax levied by the state of Washington against the owner of machinery and other property brought into the state of Washington and then being used in connection with the construction of the Grand Coulee Dam. The question there presented was entirely different than that which now confronts us.

The recent case of McGoldrick v. Berwind-White Coal Mining Co., 309 U. S. 33, 60 S. Ct. 388, 84 L. Ed. 343, sustains a tax levied by the city of New York on sales made in the city of New York. The products were sold and delivered in that city. The tax pertained to activities within the jurisdiction of the taxing body.

By reason of the foregoing, we are satisfied that the recent decisions of the supreme court of the United States, cited to us by defendants, do not involve the question that confronts us and the decisions do not overrule the precedents which we consider controlling here.

Our position is somewhat fortified by the recent case of McCarroll v. Dixie Greyhound Lines, 309 U. S. 176, 179, 60 S. Ct. 504, 506, 84 L. Ed. 441. The opinion was delivered by Justice McReynolds. Chief Justice Hughes, Justice Roberts, Justice Reed and Justice Stone concurred specially in an opinion prepared by Justice Stone. The court held that an Arkansas statute which prohibited entry into the state of any automobile or truck carrying over 20 gallons of gasoline until the state tax thereon of $6\frac{1}{2}$ cents per gallon had been paid, was unconstitutional as applied to certain busses operated by the appellee

in the states of Tennessee, Arkansas and Missouri. The opinion of Justice McReynolds states as follows:

"The often announced rule is that while generally a state may not directly burden interstate commerce by taxation she may require all who use her roads to make reasonable compensation therefor. Hendrick v. Maryland, 235 U. S. 610, 622 [35 S. Ct. 140, 142, 59 L. Ed. 385] ; Interstate Transit, Inc. v. Lindsey, supra, [283 U. S. 183] 185, 186, [51 S. Ct. 380, 381, 75 L. Ed. 953] ; Bingaman v. Golden Eagle Western Lines, 297 U. S. 626, 628 [56 S. Ct. 624, 80 L. Ed. 928].

"Here, the revenue officer demanded payment of appellee on account of gasoline to be immediately transported over the roads of Arkansas for consumption beyond. If, considering all the circumstances, this imposition reasonably can be regarded as proper compensation for using the roads it is permissible. But the facts disclosed are incompatible with that view."

The concurring opinion of Justice Stone states as follows:

"Since the subject taxed, gasoline introduced into the state in the tank of a vehicle, for use solely in propelling it in interstate commerce, is immune from state taxation except for a limited state purpose, the exaction of a reasonable charge for the use of its highways, it is not enough that the tax when collected is expended upon the state's highways. It must appear on the face of the statute or be demonstrable that the tax as laid is measured by or has some fair relationship to the use of the highways for which the charge is made. Sprout v. City of South Bend, 277 U. S. 163, 170 [48 S. Ct. 502, 504, 72 L. Ed. 833, 62 A. L. R. 45] ; Interstate Transit, Inc. v. Lindsey, 283 U. S. 183, 186 [51 S. Ct. 380, 381, 75 L. Ed. 953] ; Bingaman v. Golden Eagle Western Lines, 297 U. S. 626, 628 [56 S. Ct. 624, 80 L. Ed. 928] ; Morf v. Bingaman, 298 U. S. 407 [56 S. Ct. 756, 80 L. Ed. 1245] ; Ingels v. Morf, 300 U. S. 290, 294 [57 S. Ct. 439, 441, 81 L. Ed. 653]."

Justice Stone concludes as follows:

"There are ways enough in which the state can take its lawful toll without any suppression of the commerce which it taxes. In laying an exaction as a means of collecting compensation for the use of its highways the state must tax the commerce as it is done, and not as it might be done if the state could control it. Appellant cannot justify an unlawful exaction by insisting that it would be lawful if the taxpayer were to relinquish some of the commerce which the Constitution protects from state interference."

While the question presented in the case last quoted from is different than the question that now confronts us, it seems apparent that the decision there made was prompted by some of the principles of law which are recognized and applied in the precedents which we deem controlling here. Accordingly, the decision strengthens our conviction that such precedents have not been overruled and are still binding upon us. The decree appealed from is in accord with such precedents. It must be and it is affirmed.—Affirmed.

SAGER, HALE, BLISS and OLIVER, JJ., concur.

HAMILTON, C. J., and MITCHELL, RICHARDS, and STIGER, JJ., dissent.

MITCHELL, J. (dissenting)—I find myself unable to agree with the majority and respectfully dissent.

This is not a case in which there is a tax on interstate commerce, nor is there any unreasonable burden placed upon the Sears, Roebuck and Company. The sole question is whether the state of Iowa can say to this corporation, that before Iowa will permit the corporation to do business in Iowa, it must collect and report the use tax, which is a tax on the purchaser.

In the recent case of Ford Motor Company v. Beauchamp, 308 U. S. 331, 334, 60 S. Ct. 273, 275, 84 L. Ed. 230, the supreme court of the United States speaking through Mr. Justice Reed said:

"The statute calls the excise a franchise tax. It is obviously

payment for the privilege of carrying on business in Texas. There is no question but that the State has the power to make a charge against domestic or foreign corporations for the opportunity to transact this intrastate business. The exploitation by foreign corporations of intrastate opportunities under the protection and encouragement of local government offers a basis for taxation as unrestricted as that for domestic corporations. In laying a local privilege tax, the state sovereignty may place a charge upon that privilege for the protection afforded. When that charge, as here, is based upon the proportion of the capital employed in Texas, calculated by the percentage of sales which are within the state, no provision of the Federal Constitution is violated.''

In the case at bar, it is not a tax or an unreasonable burden, and if the corporation desires the privilege of doing business in Iowa, they must comply with the requirement of the law as far as the use tax is concerned or the state of Iowa can properly refuse to grant the corporation the permit to do business in Iowa.

I would reverse the case.

HAMILTON, C. J. (dissenting)—Being unable to concur in the majority opinion, I respectfully dissent.

The Iowa Use Tax Act, imposing a 2 percent tax upon the use of tangible personal property, was enacted by the general assembly of Iowa (chapter 198, 47th G. A.) at its forty-seventh session held in 1937, and is complementary to the Retail Sales Tax Act, imposing a 2 percent tax upon the gross receipts from sales at retail, (chapter 196, 47th G. A.) passed at the same session of the legislature. The Use Tax Act provides for exemption from the tax when the property has already been subjected to a tax on sales or use by any other state equal to or greater than the use tax imposed by the Iowa law. By section 8 of the Act:

''Every retailer maintaining a place of business in this state and making sales of tangible personal property for use in

this state, [not exempt] * * * shall at the time of making such sales, whether within or without the state, collect the tax imposed by this act from the purchaser, * * *."

By section 11, the tax required to be collected and any tax collected by any retailer "shall constitute a debt owed by the retailer to this state." Other provisions of the Use Tax Act provide for making returns and remittance of the tax imposing penalties, etc., none of which are material in the consideration of the questions here involved.

The theory of the majority opinion, as I understand it, is based on this formula: The property, which the mail-order house, appellee, is selling to Iowa users, is situated outside of the state of Iowa; the sale is consummated outside of the state of Iowa; hence, to require the seller to collect the tax at the time of the sale is an attempt to regulate an out-of-state activity which is forbidden by the 14th Amendment to the United States Constitution.

This is exactly the setup which existed in the case of Felt & Tarrant Mfg. Co. v. Gallagher, 306 U. S. 62, 64, 59 S. Ct. 376, 377, 83 L. Ed. 488, in which case the court upheld the California law, the collection feature of which is identical with that of the Iowa Use Tax Act. Appellee attempts to differentiate between the Felt & Tarrant Mfg. Co. case and the instant case and further contends that the issue of extraterritoriality involved in the instant case was not raised, argued or decided in the California case. We disagree with counsel for appellee. Mr. Justice McReynolds, who has never been accused of being unable to clearly express himself, states the issues as follows:

"Appellant seeks an injunction prohibiting the state officers from enforcing against it the California Use Tax Act of 1935. (Cal. Stat. 1935, ch. 361, as amended by Cal. Stat. 1937, chs. 401, 671 and 683.) Counsel do not question the right of the state to collect this tax from the user, etc., but they say that, in the circumstances here disclosed, the officers may· not compel appellant *to serve as an agent for collecting the tax* as they are threatening to do." (Italics ours.)

This is exactly the contention which appellee, in the instant case, is now making. From a reading of the opinion, it will be noticed that appellant was an Illinois corporation, engaged in manufacturing comptometers in that state and delivering them to purchasers in various states of the Union. Its method of doing business is set forth in the opinion. Mr. Justice Mc-Reynolds states, in the following paragraph taken from the opinion, what the argument was [306 U. S. 62, 66, 59 S. Ct. 376, 378, 83 L. Ed. 488]:

"The argument is this—

"The appellant, an Illinois corporation, carried on no intrastate operations in California and is not subject to its jurisdiction. Such business as it transacts in California is interstate in character. California, therefore, lacks the power to require it (1) to act as the state's collecting agent with respect to use tax which may become due from California storers, users or consumers, or (2) to insure payment of such tax if it fails to make collections from the tax debtors, or (3) otherwise to act as a 'retailer' as defined by the Act and the appellees. The treatment of the appellant as a retailer subject to the provisions of the California Use Tax Act is a direct burden upon interstate commerce prohibited by the Federal Constitution. Numerous provisions of the statute, if applied, would deprive appellant of its property without due process of law."

The foregoing, in substance, is the argument now made to this court in the instant case. In deciding the California case, the United States Supreme Court simply said:

"The trial court thought that both contentions were foreclosed by what was said and ruled in Bowman v. Continental Oil Co., 256 U. S. 642, 650 [41 S. Ct. 606, 609, 65 L. Ed. 1139, 1145], Monamotor Oil Co. v. Johnson, 292 U. S. 86, 93, 95 [54 S. Ct. 575, 78 L. Ed. 1141, 1147, 1148], and Henneford v. Silas Mason Co., 300 U. S. 577, 582, 583 [57 S. Ct. 524, 526, 527, 81 L. Ed. 814, 818, 819]. And we agree with that conclusion."

It will be noticed that, in the California case, the out-of-

state corporation was not even qualified to do intrastate business in California. It was not licensed as a retailer but the federal court held that, in maintaining two offices in the state, it came within the definition of "retailer" as defined by the California Use Tax Act. The orders taken were required to be submitted to and approved by the plaintiff corporation in Illinois. All sales and deliveries were required to be made by the plaintiff corporation. The general agents, domiciled in California, were prohibited from making collections, and all payments for goods ordered were required to be made directly to the plaintiff. Some of the goods were shipped direct to the purchasers in California; others were shipped to the general agents, to save freight, who, in turn, delivered them to the purchasers. In so far as the activity of collecting the tax is concerned, it would necessarily have to be as completely an out-of-state activity as in the instant case. There was no sale in California; the agents were merely solicitors of orders; the orders were sent by mail to be accepted by the company in Illinois; purchase price was to be paid in Illinois and the goods shipped directly from Illinois to the purchaser. Only the machine used in demonstration was in California. We can see no material distinction in principle between the Felt & Tarrant Mfg. Co. case and the instant case.

We do think the facts in the instant case in support of the regulatory means of collecting the tax are stronger than those in the California case. In the instant case, Iowa has granted the appellee two privileges: (1) The privilege of doing business as a foreign corporation, and (2) the privilege of operating a retail merchandising business within the state. These privileges granted furnish a more substantial basis for upholding and sustaining the burden imposed than anything appearing in the California case.

Appellee points out the activities of the two general agents soliciting orders in California and of the delivery of some of the machines by the agents to the purchasers as distinguishing features from the mail-order sales involved in the instant case. Counsel is overlooking the fact that the regulatory provision

for collecting the tax at the time of making the sale in Illinois is just as much an out-of-state activity. The purchase price was paid not to the agents but to the Illinois corporation which, under the California law, was required to collect the tax. Counsel is also wrong in saying there is no intrastate activity on the part of appellee in connection with the mail-order business. The intrastate activities, in connection with mail-order sales, consist first in the activity of the retailer, appellee, soliciting business from Iowa residents by means of distribution of large and small catalogues and special sales bulletins; by this means appellee displays its merchandise, its prices and gives its sales talk to the Iowa customers; by this means it made, in 1937, 1,200,000 sales to Iowa residents. The activity of the purchaser within the state of Iowa consisted of making out the order, enclosing the purchase price, the carrying charges, (and the requisite tax, if the law was obeyed) and placing the order in the mail and, after receipt of the goods, making use of same. The fact that the appellee, in distributing its catalogues, makes use of the express company or the United States mail instead of using its own motor trucks and making a house-to-house personal delivery of the catalogues does not make its conduct in this respect any less an activity within the state. Other activities within the state of Iowa, which obviously may be necessary, are—making adjustments in case of damaged, soiled, misfit or defective merchandise, or in the exchange of the merchandise, for any reason, which might require, in the adjustment, return of a portion of the purchase price paid; as to its credit or installment business, it might even require court action to repossess the property.

Activities, similar to the above, which are obvious were taken into consideration by the court in Equitable L. Assur. Soc. v. Pennsylvania, 238 U. S. 143, 147, 35 S. Ct. 829, 830, 59 L. Ed. 1239, wherein Justice Holmes, in expressing the views of the court, said:

"It is obvious that many incidents of the contract are likely to be attended to in Pennsylvania, such as payment of

dividends when received in cash, sending an adjuster into the State in case of dispute, or making proof of death."

Similar obvious activities were given consideration by Chief Justice Taft in the second division of the opinion in Compania General de Tabacos v. Collector of Internal Revenue, 275 U. S. 87, 98, 48 S. Ct. 100, 72 L. Ed. 177, 182. Justice Stone, in the opinion in the case of Connecticut Gen. L. Ins. Co. v. Johnson, 303 U. S. 77, 82, 58 S. Ct. 436, 439, 82 L. Ed. 673— which case is strongly relied upon in the majority opinion in the instant case—calls attention to the last two cited cases distinguishing them from the Johnson case. In the Johnson case, the reinsurance contracts involved were entirely out-of-state transactions. By its terms it called for no act in California. No act in the course of their formation, performance, or discharge took place there. The contracts were made in Connecticut; the premiums were payable there; the adjustment and payment of losses took place in Connecticut and the court said:

" * * * there is no basis for saying that reinsurance which does not run to the original insured, and which from its inception to its termination involves no action taken within California, even the settlement and adjustment of claims, is embraced in any privilege granted by that state."

We have no quarrel with the Johnson case. In discussing the 14th Amendment, Justice Stone, in the Johnson case, states [303 U. S. 77, 80, 58 S. Ct. 436, 438, 82 L. Ed. 673]:

"As a matter of convenience and certainty, and to secure a practically just operation of the constitutional prohibition, we look to the state power to control the objects of the tax as marking the boundaries of the power to lay it."

When we examine the Iowa Use Tax Act, we find the "objects" to be tangible personal property. The incident of the tax is the use of this property within the state of Iowa by the purchaser whether purchased within or without the state. Obviously, both the objects of the tax and the incident of the

tax are within the boundaries of the state of Iowa. The use tax being a tax against the purchaser-user within this state, the power to lay the tax is within the orbit of state power. This the appellee is forced to concede, under all the holdings of the United States Supreme Court. But they say, even so, yet, when it comes to the matter of collecting the tax from Iowa persons using the property purchased from appellee through the mail-order system, that Iowa may not require the Illinois corporation, as a condition to its right or privilege of continuing to conduct its business in this state, to assist the state authorities in the collection of the tax and that to require it to do so is an invasion of the due process clause of the federal constitution. The same contention was made in the case of Monamotor Oil Co. v. Johnson, supra, and in disposing of this feature, Justice Roberts, speaking for the court, said [292 U. S. 86, 93, 54 S. Ct. 575, 578, 78 L. Ed. 1141]:

"Instead of collecting the tax from the user through its own officers, the state makes the distributor its agent for that purpose. This is a common and entirely lawful arrangement. * * * and the requirement that the appellant. *as the shipper into Iowa* shall, as agent of the state, report and pay the tax on the gasoline *thus coming into the state for use* by others on whom the tax falls imposes no unconstitutional burden either upon interstate commerce or upon the appellant.

" * * * The method of imposition and collection of the tax does not deny the equal protection of the laws guaranteed by the XIV Amendment." (Italics ours.)

In the case of Henneford v. Silas Mason Co., supra, the United States Supreme Court had under consideration the Use Tax Act of the state of Washington, which is very similar to the Iowa Use Tax Act. The extraterritorial feature presented in the instant case was not involved in the Henneford case; however, the opinion written by the late eminent Mr. Justice Cardozo does contain a very masterful, general analysis of the Use Tax Law and to our mind is a complete answer to every contention relied upon by appellee other than the so-called extra-

territorial issue. See also the recent case of Osborn v. Ozlin, 310 U. S. 53, 60 S. Ct. 758, 84 L. Ed. 705, opinion by Mr. Justice Frankfurter.

The Iowa Use Tax is not laid upon property outside state boundaries nor upon the sale of property made outside the state nor can it be said that the tax is upon any privilege exercised and enjoyed by appellee in other states. Contra, the tax is laid on the privilege of use within the state, and the incidental burden of collecting the tax is upon the privilege granted by the state to appellee—a privilege actually made use of—to engage in the retail business within the state. The place of making the sale has no connection with the duty of collecting the tax. The same duty applied to all retailers within the state no matter where the sale is made. The state in effect constitutes the retailer its agent for the purpose of collecting from the source, to wit, the purchaser, the tax which admittedly the purchaser-user owes the state. The state says to each retailer:

"In consideration of the right or privilege of engaging in the retail business in Iowa, you must aid the state in its administration of the law by performing this incidental duty of collecting the tax at the time of making the sale."

The difficulty of enforcing the tax provisions, in any other manner, would seem to be insurmountable; hence, the duty imposed of aiding the state in administering the law follows natural and reasonable avenues. The suggested difficulty, loss and expense, which appellee will sustain in connection with the collection of the tax from mail-order customers due to the fact that some would not include the tax with the purchase price, is answered by Mr. Justice Brandeis, in the opinion in Pierce Oil Co. v. Hopkins, 264 U. S. 137, 139, 44 S. Ct. 251, 68 L. Ed. 593, 596, in the following language:

"A short answer to this argument is that the seller is directed to collect the tax from the purchaser when he makes the sale; and that a State which has, under its constitution, power to regulate the business of selling gasoline (and doubt-

less, also, the power to tax the privilege of carrying on that business) is not prevented by the due process clause from imposing the incidental burden.''

Appellee's contention, that the law discriminates against it in that other out-of-state mail-order houses, who have not qualified as retailers within the state of Iowa, are not subject to the burden of collecting the tax, may be disposed of by stating that such corporations enjoy no privilege granted to them by the state of Iowa. The mail-order business conducted by appellee is only one branch of its extensive business transacted with Iowa customers. It enjoys the privilege of operating 12 large retail stores within the state; all of these stores carry on a mail-order business for their customers if the goods wanted are not carried in stock; and, through the means of distributing hundreds of thousands of catalogues to people throughout the state of Iowa, they reach into the state and transact business, designated as Type 3, amounting to more than 5½ million dollars annually, comprising approximately 1,200,000 orders with Iowa mail-order customers, in the year 1937. Needless to say, the privilege of doing business in Iowa is a valuable one, and the incidental burden of collecting the tax is no greater upon appellee than upon other domestic concerns doing business in competition with appellee within the state. It is a fact, so well known as to be judicially noticed, that practically all department stores in the state do a large mail-order business in connection with their regular business, and, as to such business, would experience the same difficulty in collecting the tax in full from mail-order customers. The incident of the tax being upon the use of the property within this state cannot be said to be an attempt on the part of the state to regulate out-of-state activities. No other state could impose a like burden upon the use of property within the state of Iowa, and, should the sister states, in which appellee's mail-order establishments are situated, impose a sales tax or use tax equal or greater than the use tax imposes by the Iowa law, and the user in Iowa has paid the

same, the Iowa Use Tax would not attach; hence, there is no possibility of a double imposition of the same burden.

The Use Tax Act being complementary to the Retail Sales Tax, the two acts should be construed together. In this state, statutes in pari materia are construed together. Conly v. Dilley, 153 Iowa 677, 133 N. W. 730; Story County v. Hansen, 178 Iowa 452, 159 N. W. 1000; Balen v. Colfax Consolidated Coal Co., 183 Iowa 1198, 168 N. W. 246; Fitzgerald v. State, 220 Iowa 547, 260 N. W. 681. The propriety of this rule was recognized by the United States Supreme Court in Gregg Dyeing Co. v. Query, 286 U. S. 472, 480, 52 S. Ct. 631, 634, 76 L. Ed. 1232, 84 A. L. R. 831, wherein Chief Justice Hughes, speaking for the court, said:

"There is no demand in that Constitution that the State shall put its requirements in any one statute. It may distribute them as it sees fit, if the result, taken in its totality, is within the State's constitutional power."

When the two acts are considered together, it is manifest that the general plan and purpose running throughout the provisions of the statutes is that of equal distribution, as far as possible, of the burden as between domestic and foreign corporations conducting a retail business within the state, and that there is nothing in the law imposing the tax or the regulatory means adopted for collecting the same which imposes an inequality upon or discriminates against appellee.

We hold that the collection provisions of the Iowa Use Tax Act, as applied by the appellants, is not an invasion of the constitutional provisions of the constitution of the United States relied upon by appellee and, accordingly, the decree of the trial court should be reversed.

STIGER and RICHARDS, JJ., join in this dissent.