WARE CATTLE COMPANY, Appellee, v. ANDERSON & Co. *et al.*, Appellants.

**Agistment:** ACCOUNTING. *Burden of proof.* In an action on a contract of agistment, whereby defendants undertook to deliver at the close of the season the cattle received thereunder, and to pay for all lost, stolen, etc , the burden of accounting for such as were not so delivered was on defendants.

INSTRUCTIONS. Where defendants had contracted to keep plaintiff's cattle "constantly in good pasture," they were not prejudiced by an instruction, in an action for a breach of such contract, that such pasture was "not necessarily the very best pasture."

SAME. In an action for damages for the breach of a contract of agistment, in which the quantity of the pasturage to be furnished by defendants was expressly defined, instructions that defendants were only required to furnish pasturage of an average quality and quantity for the locality where such contract was to be performed, and in view of the climatic conditions during the season covered thereby, were properly refused.

*Requesting.* An objection that an instruction is not sufficiently comprehensive will not avail, in the absence of a request for further instructions on the point involved.

EXPERT TESTIMONY. On the issue as to the probable gain of cattle in weight, if kept on good pasture during a specified season, the testimony of experts was admissible.

**Actions:** FOREIGN CORPORATIONS: *Estoppel.* A foreign corporation which had obtained no permit authorizing it to do business in the state as required by Acts Twenty-first General Assembly, chapter 76, was not thereby rendered incapable of maintaining an action in the local courts against a nonresident for damages under a contract executed and to be performed, except as to the delivery of the property, in another state.

*Appeal from Monona District Court.*—HON. GEORGE W. WAKEFIELD, Judge.

FRIDAY, JANUARY 20, 1899.

ACTION at law, upon a written contract of agistment, to recover for the loss of sixteen head of cattle, and for failure

to properly care for the remainder of the cattle received.
Defendants denied all responsibility for the loss or damage,
and further pleaded that the cattle were diseased when they
received them. It is also alleged that plaintiff is a foreign
corporation, and that it has never complied with the law
authorizing it to do business in this state. Defendants further
pleaded a counterclaim for the pasturage of the cattle. In
reply, plaintiff pleaded that defendants were estopped from
relying upon plaintiff's failure to comply with the law
applicable to foreign corporations, and certain other matters,
which, so far as they are material, will be noticed in the body
of the opinion. The case was tried to a jury, resulting in a
verdict and judgment for plaintiff, and defendants appeal.—
*Affirmed*.

*George A. Oliver* and *Wright & Hubbard* for appellants.

*John S. Monk* and *McMillen & Kendall* for appellee.

DEEMER, J.—Plaintiff is a corporation organized under
the laws of the state of Illinois. As such it entered into the
following contract with the defendants, towit: "This is to
certify that we, George Anderson and Co., of Decatur,
Nebraska, have received from the Ware Cattle Com-
pany of Chicago, eight hundred and forty-six (846)
head of cattle to pasture during the grazing season of 1894,
which I agree to take care of in faithful manner, keeping
said cattle constantly in good pasture (not less than three acres
per head), with an abundance of fresh water. I also agree to
keep plenty of salt in the pasture, accessible at all times to
said cattle. At the end of the pasture season I agree to
deliver the said cattle, in good condition, to the said Ware
Cattle Company, at Onawa, Iowa; the consideration for such
care, pasturage and ferriage both ways being one dollar and
fifty cents per head. I also agree to pay for all cattle lost or
stolen, or for all that may die through neglect of attention in
any manner. Seven hundred and fifty of said cattle are

branded with H E on the left hip; seventy-three three year old cattle are branded with N N on the left side, and N on left hip; and thirteen head are branded N on left side and N on left hip. And it is also agreed that the pasturing will be paid for before leaving Nebraska. Signed, Decatur, Nebraska, June 8th, 1894. George Anderson & Co., by J. R. Anderson." The action is bottomed on this contract. Plaintiff claims that it delivered to defendants thereunder eight hundred and forty-six head of cattle, and that defendants returned but eight hundred and thirty. It further alleges that defendants failed to keep the cattle and furnish the pasture as agreed, and that by reason thereof it suffered the damage which it seeks to recover. There is some dispute in the evidence as to the number of cattle received and returned, but that matter was settled by the jury and is not subject to review on this appeal.

I.    The first point made by appellants is that appellee is not entitled to enforce its contract or maintain its action, for the reason that it has never complied with the laws of this state (Acts Twenty-first General Assembly, chapter 76) authorizing it to do business in this jurisdiction. That it has not complied with this law is conceded, but it does not appear that in making the contract or in bringing this suit it was acting contrary to the provisions of that statute. Appellants are residents and citizens of the state of Nebraska. The contract was executed in that state, and, save as to the delivery of the cattle, was to be performed there. True, some of the cattle were purchased in this state, and others were shipped from Omaha, Nebraska, through a portion of Iowa, and back into Nebraska, where they were delivered to appellants under the contract. Surely the corporation had the right to purchase cattle in this state, and it clearly had the right to transport them through the state without complying with the statute to which we have referred. See *Colorado Iron Works v. Sierra Grande Min. Co.,* 15 Colo. 499 (25 Pac. Rep. 325); *Manufacturing Co. v. Ferguson,* 113 U. S.

727 (5 Sup. Ct. Rep. 739). Moreover, appellants are in no
position to object to these commercial transactions. If their
contract had been made in this state, there would be room for
argument; but, as it was not, they cannot be heard to com-
plain. Appellee had the right to bring suit without complying
with the statute. *Cook v. Brick Co.,* 98 Ala. 409 (12 South,
Rep. 918); *Mandel v. Cattle Co.,* 154 Ill. 177 (40 N. E. Rep.
462); *Mumford v. Trust Co.,* 4 N. Y. 463; *Insurance Co. v.
Way,* 62 N. H. 622.

II.    The court instructed the jury that the burden was
on the defendants to account for the cattle which they failed
to return, and of this complaint is made. Reference to the
contract will disclose that defendants undertook to
deliver the cattle received thereunder, at the end of
the season, in good condition, at Onawa, Iowa, and to
pay for all lost or stolen, etc. But for this contract, it might
be contended with some reason that the burden was on appel-
lee, although the great weight of modern authority is to the
contrary. See cases cited in 3 Am. & Eng. Enc. Law (2d ed.)
p. 750. The action is for breach of this contract, and appellee
made out a *prima facie* case when it showed non-delivery in
accordance with the terms of that instrument. *Coggs v. Ber-
nard,* 2 Ld. Raym. 909; *Cass v. Railroad Co.,* 14 Allen, 448.
That appellee charged negligence in the petition is not
regarded as controlling, for the reason that it was not
required to prove more than was necessary to entitle it to
the relief demanded. Code 1873, section 2729; *Engle v.
Railway,* 77 Iowa, 661.

III.    In the fifth instruction the court said that the obli-
gation of defendants was to keep the cattle constantly in good
pasture, "but not necessarily the very best pasture," and that
it was for the jury to determine, from all the evidence, whether
defendants did keep the cattle "constantly in good
pasture." Appellants contend that from the qualifica-
tion quoted, the jury may have inferred that it was
their duty to keep the animals in the very best pasture. This

is a strained and unnatural inference, and we do not think such conclusion is either fair or natural. The qualification was for defendant's benefit, and they have no just cause for complaint. Defendants asked an instruction to the effect that they were only required to furnish pasturage of an average quality and quantity in the vicinity where the contract was to be performed. This instruction was refused, and properly so, for the reason that the quantity of pasturage was expressly defined in the contract. This same thought also answers appellants' contention that they were to furnish an average quality of pasture, dependent upon the season and climatic conditions. Defendants agreed to furnish good pasture, with an abundant supply of fresh water. Whether or not it was prudent to enter into such an obligation is not our province to determine. Defendants made it, and they do not claim that they were relieved of their obligation by act of God. Having made it, they are bound thereby, and the court correctly instructed the jury as to their duty thereunder.

IV. Instruction 9 referred to defendants' defense that the cattle were diseased when accepted under the contract. In effect, it said that if defendants complied with the contract on their part, and the cattle were diseased, then defendants would not be liable for any loss occasioned by the disease. This is said to be erroneous, because defendants were entitled to have the condition of the cattle considered whether they complied with their contract or not. No doubt, this is true, but the instruction says nothing to the contrary. It is good as far as it goes, and, if defendants wished further instructions on this point, it was their duty to have asked them. Again, the court, in its eighth instruction, expressly told the jury that defendants should only be held responsible for such loss or damage as was occasioned by their failure to perform the contract. Moreover, if there was any error in this respect it was without prejudice, for the jury found specially that the cattle were not diseased when defendants received them. Defendants asked instructions defining what

was meant by the term "good pasture." We will not set them out. They announce the proposition that, if defendants furnished good pasture for the year 1894 (that is, if the pasturage was good for that time and locality), it was good within the meaning of the contract. There is no claim in answer that defendants were excused because of drought. Their contention was that they had furnished good pasture, and that the animals did not thrive because they were diseased. Under such issues, time and year were wholly immaterial. A good pasture, under such a state of facts, is the same one year with another. While it may have been, and doubtless was, proper for the jury to consider locality, in determining the character of pasture to be furnished, yet the court virtually so said in its instructions. But, if we are mistaken in this, the terms used in the contract are plain and unambiguous, and omission to define such terms, especially in the absence of proper request, is not error. *Bank v. Black,* 91 Iowa, 490.

V. Appellee introduced evidence, over appellants' objections, to show the probable gain of cattle in weight, if kept on good pasture during the season of 1894. Some of these witnesses never saw the cattle in question, and some of them did not know of the character of the pasture. They were offered as experts, however, and their testimony was clearly admissible. It should be remembered that one of the issues in the case was whether the cattle failed to fatten because of their diseased condition, or because of the condition of the pasture. If the animals were not diseased, as the jury found, then the evidence adduced by appellee would tend to show that they did not have sufficient food. See Roger's Expert Evidence, sections 112, 113. Evidence as to the condition of other cattle kept in appellants' pasture during the year 1894 was also admitted over appellants' objections. This evidence was clearly admissible. One witness was permitted to state, over appellants' objection, the amount of gain made by other cattle in other pastures. This he stated to be something over two hundred pounds a head. There was

evidence to the effect that the pasture to which this witness referred was no better than that owned by appellants, and that the cattle kept therein were in practically the same condition. Now, while there is, to say the least, much doubt of the admissibility of the evidence objected to, still we think the error, if any there be, is without prejudice. It amounted to but little more than a declaration that cattle in good condition, kept on a fair pasture, would gain two hundred pounds a head during the pasturage season. Appellants entered the same field of inquiry, not only for the purpose of contradicting appellee's witness, but for the purpose of showing that the pasturage furnished by them was as good as they were obliged to furnish under their contract, and they cannot be heard to complain. See *Spaulding v. Railway Co.*, 98 Iowa, 205, and cases cited; 2 Enc. Pl. & Prac. p. 559, and cases cited.

VI. The jury, in answer to interrogatories, found that defendants failed to comply with their contract, to plaintiff's damage in the sum of three thousand and sixty-one dollars. It also found that plaintiff was entitled to two hundred and thirty-one dollars and fifty-nine cents for failure to return certain of the animals. It further found that defendants were entitled to one thousand two hundred and forty dollars and fifty cents for pasturing the cattle, and returned a general verdict for plaintiff for the difference between the accounts. It further found that the cattle were not diseased when defendants received them, and that if they had been kept on good pasture, and treated and cared for as required by the terms of the contract, they would have gained seventy-five pounds per head during the season. It is argued that these findings and the general verdict are without support in the evidence. We have examined the record in the light of this claim, and are of opinion that it is entirely without merit. There is ample evidence to sustain both the general and special verdicts, and we cannot interfere. We discover no prejudicial error in the record, and the judgment is AFFIRMED.