JOSEPH T. RYERSON & SON, INCORPORATED, Appellee, v. WILLIAM L. SCHRAAG et al., Appellants.

No. 40104.

MARCH 11, 1930.

REHEARING DENIED DECEMBER 13, 1930.

*Charles C. Heninger,* for appellants.

*Gillies, Daugherty & Oughton,* for appellee.

*Hamilton & Updegraff,* for Independent School District of Keota.

FAVILLE, J.—On July 24, 1926, the appellant Schraag entered into a written contract with the Independent School District of Keota, Iowa, to furnish the material and perform the work for the construction of an addition to a high school building, for a lump sum of $61,977. On the 26th day of July, 1926, said contractor executed his bond to the said Independent School District, as provided by Section 10300 *et seq.,* Code, 1924, the appellant Union Indemnity Company being surety on said bond. On the 24th day of July, 1926, appellant Schraag entered into a written contract with J. Goldberg & Sons, of Kansas City, Missouri, for the purchase of certain steel material, to be used in the construction of said building, the same to be delivered f. o. b. cars Keota, Iowa. On August 4, 1926, said Goldberg & Sons entered into a written contract with the appellee Ryerson & Son, whereby the said appellee agreed to furnish said structural steel for the addition to said high school building for an agreed price f. o. b. Keota, Iowa. The appellee furnished said material, in accordance with its said contract with Goldberg & Sons, and the same was used in the construction of said building. On June 24, 1927, the appellee duly filed its claim for the balance due it upon its said contract, and subsequently brought this action in equity against said principal contractor and the surety on its bond and the said school district. The court decreed judgment against said principal contractor and said surety for the balance due the appellee under its contract, and decreed judgment against the school district for the balance remaining in its hands due to the principal contractor. The school district does not appeal. By its pleadings, the district alleges its willingness to pay said sum in its hands to whomsoever the court shall decree to be entitled thereto. On September 9, 1927, the work under

the principal contract was completed, and accepted by the school district.

I. Appellants contend that appellee cannot maintain this action in this state because of the fact that it is a foreign corporation, and has not obtained a permit to "conduct and carry on its business in this state." Chapter 386 of  the Code, 1924, provides for the securing of permits by foreign corporations to conduct and carry on their business in this state. Section 8427 is a portion of said chapter, and is as follows:

"No foreign stock corporation doing business in this state shall maintain any action in this state upon any contract made by it in this state unless prior to the making of such contract it shall have procured such permit. This prohibition shall also apply to any assignee of such foreign stock corporation and to any person claiming under such assignee of such foreign corporation or under either of them."

The appellee is a corporation duly organized under the laws of the state of Illinois, and its principal place of business is at Chicago. It did not have a permit to conduct and carry on its business within this state. It is the contention of appellants that the appellee was "doing business" within this state, within the purview of said chapter, and that, by reason of its failure to procure a permit to conduct business in this state as a foreign corporation, it cannot maintain this action, because of the provisions of said Section 8427. A similar statute has been enacted in many of the states of the union, and a very large number of decisions have been announced by the courts of last resort, construing the term "doing business" as used in such statutes. These authorities are largely collected in 3 Words and Phrases (1st Ser.), 2 Words and Phrases (2d Ser.), and 2 Words and Phrases (3d Ser.), under the words "doing business."

It has long been the established rule in this state that, where an order for goods or merchandise is taken in this state and forwarded to another state which is the home office of the corporation or of the principal of the agent who took the order, and such order is subject to acceptance or approval by the principal, the contract is not a contract in this state where the order was

taken, but is one in the state where the principal resides, and that an action may be maintained on such a contract by the foreign corporation in this state without securing a permit under the statute. The cases are collected in the recent case of *Service System v. Johns*, 206 Iowa 1164. See, also, *American Asph. Roof Corp. v. Shankland*, 205 Iowa 862, loc. cit. 866.

The contract involved in the instant case was executed between two parties, one of whom was a resident of the state of Missouri, and the other a resident of the state of Illinois. The principal contractor was also a resident of Missouri. The contract was not "made by it [appellee] in this state," and hence does not come within the provisión of the statute. *Standard Tile & Marble Co. v. Detroit Fid. & Sur. Co.*, 207 Iowa 619. The contract was not only not "made in this state," but it was not to be performed in this state. The contract was to be performed wholly outside the state of Iowa. The only requirement was that delivery of the steel was to be made within this state. Did this constitute "doing business" within this state, within the purview of the statute? A similar question was before this court in the case of *Ware Cattle Co. v. Anderson & Co.*, 107 Iowa 231. In that case the defendants were residents and citizens of the state of Nebraska. The contract was executed in that state, and, save as to the delivery of the cattle which were the subject-matter of the contract, it was to be performed in the state of Nebraska. We held that the plaintiff in said action had a right to maintain the suit without complying with said statute. See 14A Corpus Juris 1286, Section 3993, where the authorities are collected.

In this connection, it is also to be noticed that the contract made no provision whatever for the performance of any act of a local character within the state of Iowa, such as the placing of said material in the building. Nothing was to be done in this state by the appellee under said contract except the mere delivery of the material at Keota, Iowa. The cases uniformly hold that, under such circumstances, the foreign corporation does not come within the purview of a statute of the kind under consideration. The portion of the contract to be performed in this state—to wit, delivery of the material—was merely incidental to the business in which the corporation was engaged, and did not constitute the doing or carrying on of business within this state, within

the meaning of said statute. This is the uniform holding of the courts, and has been announced in a great number of decisions. 14A Corpus Juris 1276, Section 3892.

Again, if the statute included a transaction of this kind merely because the contract called for delivery within the state of Iowa, it would be repugnant to the Commerce Clause of the Constitution of the United States, and could not be upheld. *Dahnke-Walker Mill. Co. v. Bondurant,* 257 U. S. 282 (66 L. Ed. 239); *Crutcher v. Kentucky,* 141 U. S. 47 (35 L. Ed. 649); *Western Union Tel. Co. v. State of Kansas ex rel. Coleman,* 216 U. S. 1 (54 L. Ed. 355); *International Textbook Co. v. Pigg,* 217 U. S. 91 (54 L. Ed. 678); *Sioux Remedy Co. v. Cope,* 235 U. S. 197 (59 L. Ed. 193).

At this point we reach the conclusion that, for the reasons stated, the appellee was not "doing business" within this state, within the purview of the statute, and that appellee was entitled to maintain the action without having first obtained a permit authorizing it to do business within this state.

II. It is contended that the principal contractor settled in full with the first subcontractor for the material in question by a trade acceptance, and hence that appellee cannot maintain  this action. The original contract in this case providing for a public improvement, in contemplation of Code Section 10299, it was mandatory that a bond be given. Code Section 10301. The statutory requirements are a part of such a bond. *Philip Carey Co. v. Maryland Cas. Co.,* 201 Iowa 1063; *Ottumwa Boiler Works v. O'Meara & Son,* 206 Iowa 577.

The statute provides (Section 10304, Par. 1):

"The following provisions shall be held to be a part of every bond given for the performance of a contract for the construction of a public improvement, whether said provisions be inserted in such bond or not, to wit:

"1. 'The principal and sureties on this bond hereby agree to pay to all persons, firms, or corporations having contracts directly with the principal or with subcontractors, all just claims due them for labor performed or materials furnished, in the performance of the contract on account of which this bond is

given, when the same are not satisfied out of the portion of the contract price which the public corporation is required to retain until completion of the public improvement, but the principal and sureties shall not be liable to said persons, firms, or corporations unless the claims of said claimants against said portion of the contract price shall have been established as provided by law.' ''

Code Section 10305 provides for the filing of claims by any person, firm, or corporation who has, under a contract with the principal contractor *or with subcontractors,* performed labor or furnished materials, etc.

Code Section 10313 is as follows:

"The public corporation, the principal contractor, any claimant for labor or material who has filed his claim, or the surety on any bond given for the performance of the contract, may, at any time after the expiration of thirty days, and not later than six months, following the completion and final acceptance of said improvement, bring action in equity in the county where the improvement is located to adjudicate all rights to said fund, or to enforce liability on said bond."

This action is brought under the express terms of this statute.

The principal contractor and the surety on his bond, under the terms of the statute, are liable to pay "subcontractors" "all just claims due them for labor performed or materials furnished, in the performance of the contract on account of which the bond is given." Appellee's claim was "established as provided by law." The appellee is a subcontractor. It has not been paid. The bond given for its benefit, under the very terms of the statute, has been breached. It is no defense to appellee's claim, under the statute and under the bond, that the principal contractor gave a trade acceptance to the first subcontractor. The statute and the bond make no exception to liability to a subcontractor by reason of such an arrangement between the principal contractor and the first subcontractor. The principal contractor knew that appellee was a subcontractor. We cannot abrogate the plain provisions of the statute and the express terms of the bond. They are binding on the principal contractor and

his surety, and must be enforced for the benefit of one who, like appellee, comes within their provisions.

Appellant relies upon *Stewart & Hayden v. Wright*, 52 Iowa 335. This case did not involve a public improvement, and did not arise under the cited statutes. It is obviously inapplicable to the situation presented in this case.

III. On or about the 10th day of August, 1926, Goldberg & Sons executed and delivered to the appellee a written assignment of the proceeds of their contract with the principal contractor. The assignment recites that it is "made  to protect and secure payment to said Joseph T. Ryerson & Son, Inc., for material furnished or to be furnished by it for use in the performance of said contract." The evidence shows that, prior to the making of this assignment, the principal contractor had already accepted a trade acceptance for substantially the entire amount of his contract with Goldberg & Sons. This was not known to the appellee at the time said assignment was made. It appears from the evidence that the appellee never received anything on said assignment. It did not notify the principal contractor that it held said assignment until on or about February 12, 1927. An officer for appellee testified that appellee depended upon Goldberg & Sons to collect the money and turn it over to appellee as they received it. Appellant claims that Goldberg & Sons were appellee's agent to collect, under said assignment. It appears that no funds whatever were received under said assignment. As previously stated, the principal contractor had executed a trade acceptance to Goldberg & Sons, which had been transferred to a bank in Kansas City prior to its maturity; and it appears from the record that all payments that were made by the principal contractor to Goldberg & Sons were credited on said trade acceptance in the hands of said bank, and that none of the funds paid by the principal contractor under said trade acceptance belonged to Goldberg & Sons, but instead, belonged to the bank, and that none of said funds ever passed to appellee under and by virtue of said assignment.

Appellants contend that, by reason of the fact that the appellee, after receiving said assignment, looked to Goldberg & Sons as its agent to collect from the principal contractor and

pay to the appellee the amount so collected, appellants are entitled to credit for the amount paid by the principal contractor to Goldberg & Sons, and that appellee is estopped to deny payment to it of said sum. The difficulty with the appellants' contention at this point is that the appellee received nothing whatever under said assignment, nor did its agent, Goldberg & Sons, receive anything that belonged to appellee. The trade acceptance which had been given by the principal contractor to Goldberg & Sons absorbed the entire amount that was paid by the principal contractor under his said contract. The assignment of the trade acceptance carried these funds directly to the bank that held said trade acceptance, and not to the appellee, under said assignment from Goldberg & Sons. We fail to find that the facts, as disclosed by the record, constitute a payment to the appellee, or can be made the basis of an estoppel.

The argument of the appellants has taken a wide range. The foregoing discussion disposes of the main contentions in the case. We have considered all of the other propositions argued by appellants. We are of the opinion that the conclusion of the trial court was correct, and that the decree entered was in accordance with the law and the evidence in the case. We find no sufficient basis to warrant our interfering with the decree of the trial court, and it is in all respects—*Affirmed.*

MORLING, C. J., and EVANS, KINDIG, and GRIMM, JJ., concur.