James HAYES, d/b/a Hayes Tool and
Die Company, Appellant,

v.

Saibolt HETTINGA, d/b/a Hettinga
Company, Appellee.

No. 55219.

Supreme Court of Iowa.

April 16, 1975.

Dreher, Wilson & Adams, Des Moines, for appellant.

Johnson, Jordan & Lane, Knoxville and Gaass, Klyn & Boehlje, Pella, for appellee.

Heard before MOORE, C. J., and Le-GRAND, REES, HARRIS and McCOR-MICK, JJ.

LeGRAND, Justice.

This is a suit under the Uniform Commercial Code (Chapter 554, The Code, 1971), by which plaintiff seeks to recover for alleged breach of contract. Defendant, in turn, counterclaimed for damages, asserting the breach was plaintiff's, not his. The case was tried without a jury. The trial court found against plaintiff and dismissed his petition. On the counterclaim, defendant was awarded judgment for return of the partial payment he had made on the contract, but his prayer for other damages was disallowed. Both parties appeal, and we affirm on both appeals.

■■ Trial of the case, interrupted by two long recesses, began February 1, 1971 and concluded April 29, 1971. The record consists of some 700 pages of testimony and nearly 100 exhibits. The trial court described the trial as "one long discovery process which was interesting but did not help the court with its problem of relating evidence to the real issues." The court further noted the issues, despite numerous attempts to refine them, were never precisely framed with reference to the Uniform Commercial Code. We agree with both these observations. In reviewing the evidence as related to the pleaded issues, we adhere, of course, to the rule the trial court's findings are binding on us if supported by substantial evidence and the corollary that we seek to uphold, rather than defeat, the result reached. Rule 344(f)(1), Rules of Civil Procedure; Whewell v. Dobson, 227 N.W.2d 115 (Iowa 1975); Jacobson v. Benson Motors, Inc., 216 N.W.2d 396, 398 (Iowa 1974); Long v. Glidden Mutual Insurance Association, 215 N.W.2d 271, 272 (Iowa 1974); Kengorco, Incorporated v. Jorgenson, 176 N.W.2d 186, 188 (Iowa 1970).

The facts upon which the trial court based its findings are as follows. In 1968

plaintiff and defendant entered into a contract by which plaintiff was to custom make two molds—a lid and a cup—to be used in manufacturing plastic containers for a deodorizer which acted as a household air freshener. Plaintiff agreed to make the molds for $12,500. One-half, or $6,250, was paid down. The balance was to be paid upon completion of the contract. Defendant, meantime, had entered into a separate agreement to sell the finished containers to Earl Harmon Products.

From the start, plaintiff encountered difficulty in fabricating the molds. First, the runner system which channeled the hot plastic to the mold cavities failed to operate properly. In addition, part of one mold cracked as the result of an imperfect fit between cores and cavities. Some corrective procedures were undertaken, and the modified molds then proved to be unsuitable because they were larger than called for by the plans and drawings. This apparently resulted from an erroneous reading of the tool drawings by plaintiff, who miscalculated the "shrinkage factor."

Again plaintiff undertook to rework the molds. This now involved extensive alterations including (1) remaking the cores and cavities of the lid mold; (2) grinding down the core and changing the cavities for the cup mold; and (3) design changes in the lid.

When all this was completed, plaintiff again had the molds tested. They were still unsatisfactory, and plaintiff made yet another attempt to perfect them by grinding down the core on the lid mold; but now too much was ground off. To correct this latest error, plaintiff had the lid mold chrome plated.

After each corrective procedure, the molds were tested. This was done by at least three firms—Janlin Plastics, Dubuque; Mid-Central Plastics, Des Moines; and May Plastics, Kansas City. Each time the molds proved unsuitable for defendant's purposes.

Plaintiff conceded some of these faults were attributable to him, but denied others. The trial court found against him in each instance, the inevitable result of which was the conclusion plaintiff could not recover on his claim.

We consider the following findings and conclusions by the trial court to be crucial and in each case we find substantial support for them in the record:

"[T]he court finds that the plaintiff failed to manufacture said molds in accordance with the specifications furnished to them by the defendant and that the plaintiff further failed to produce said molds within the time as stated in said contract."

" * * *

"The court further found that the buyer chose after inspection to reject the tender. The court concludes that the buyer * * * properly communicated his rejection and cancellation to the seller. The court further concludes that, although given many opportunities to cure defects, there was no cure of the defects on the part of the seller nor was there a waiver of the defects on the part of the buyer."

" * * *

"The record is void of any testimony showing that the Hayes' molds were ever satisfactorily completed and delivered to the defendant or to any point designated by him and the court finds that the plaintiff did fail to deliver the said molds."

Plaintiff raises two issues on this appeal. They are: (1) There was insufficient evidence to support the findings of the trial court; and (2) the trial court applied erroneous principles of law in arriving at its judgment.

Plaintiff claims he performed the contract; that he delivered the goods; that they were accepted; and that he is entitled to his purchase price together with other damages. Although, as already noted, the pleadings are not entirely free from doubt, we conclude plaintiff brought this action to recover for the price of goods sold under § 554.2709, the relevant portion of which is here set out:

"(1) When the buyer fails to pay the price as it becomes due the seller may recover, together with any incidental damages under the next section, the price (a) of goods accepted * * * "

Plaintiff argues defendant accepted the molds by failing to reject them within a reasonable time and by using them to produce the containers. See § 554.2606. He insists the evidence shows without dispute that, first, 5,000 and, later, 50,000 of the plastic lids and cups were run off from his molds and accepted by, or at least used for, defendant. We do not read the evidence that way, and plaintiff fails to point out the places in the record or transcript where this sweeping generalization is supported. See Rule 344(g), R.C.P.

We find the evidence is conflicting on these matters in at least two important respects. Concerning the first, when 5,000 of the plastic parts were run off, there is doubt as to whether these were completed for defendant or at the independent request of Earl Harmon Products after defendant had rejected the tendered molds. Plaintiff simply failed to show defendant authorized production of any parts. As for the later run of 50,000 containers, there is substantial evidence these were not made from plaintiff's molds at all, but were fabricated from entirely different molds made by May Plastics of Kansas City. Plaintiff failed to establish defendant's acts constituted acceptance under § 554.2606(1)(c). See White and Summers, Uniform Commercial Code (Hornbook Series, 1972), Acceptance, § 8–2, page 242 et seq.

Furthermore, under the findings of the trial court, the question of acceptance never really became important, since the court found there had been no compliance with the contract and there had been an effective rejection. See White and Summers, supra, § 7–3, pages 210–211. We point out once more that there is conflict in the evidence as to these matters. To prevail now it would have been necessary for plaintiff to have established his theory in the trial

court as a matter of law. He did not meet this formidable burden.

Plaintiff also argues strenuously there is irreconcilable conflict between the finding there had been *no delivery* and the conclusion defendant had rejected a *tender of non-conforming goods*. We believe the record shows this seeming inconsistency is not really one at all.

Perhaps the trial court did not set this out as clearly as plaintiff would like, although we do not believe the meaning is subject to misinterpretation. As we understand the findings and conclusions, the trial court found there was an *ultimate* failure by plaintiff to satisfactorily make and deliver completed molds as he had agreed to do. However, in speaking of *tender*, the court was talking about plaintiff's attempt to make delivery after trying to remedy the early defects which had developed.

There is abundant testimony about the numerous imperfections which plaintiff tried to remedy. After each successive effort to correct the molds, additional tests demonstrated they still did not conform. When all efforts to cure had failed, there was a breach of the contract by failing to manufacture the molds according to the contract specifications or to make delivery of suitable molds to the defendant. See Squillante, Sales Law in Iowa Under the Code, 20 Dr.L.Rev. 1, 82–84 (1970).

These findings are not inconsistent and contradictory when viewed in their proper context. The record supports a finding that after several attempts to remedy a defective product, defendant rejected a tender of non-conforming goods. Since time for the performance of the contract had expired, plaintiff no longer had the unfettered right to "cure" pursuant to § 554.2508(1).

Plaintiff, however, might have extended the time for performance and "cure" under § 554.2508(2), thus depriving defendant of his right to reject, if he had established: (1) he had reasonable grounds to believe the

nonconforming tender would be acceptable; (2) he notified defendant of his intent to cure; and (3) he did cure within a "further reasonable time." See White and Summers, supra, § 8–4, page 266 et seq.; Sellers Right to Cure Non-Conforming Goods, 6 Rutgers Camden L.J., pages 387–416 (1974); U.C.C.—Sales—2–508 and 2–608, Limitations on the Perfect Tender Rule, 69 Mich. L.Rev., page 130 (1970); cf. Comment, 53 Iowa L.Rev., 780–790 (1967).

■ The evidence fails to disclose any compliance with § 554.2508(2). There is ample support for the finding plaintiff failed (1) to notify defendant of an intent to cure and (2) failed to effect a cure within a "further reasonable time" or, indeed, at any time. After plaintiff's last attempt to put the molds in working order, the record is silent concerning any tender to defendant, of any examination of the mold by him or by anyone for him, or of any acceptance or rejection by him. Neither, incidentally, is there any evidence the parts even then met the necessary standards.

■ Time was of the essence in the performance of this contract. Plaintiff had numerous opportunities to conform his tender to the contract, but was unable to do so. A seller does not have an unlimited period of time to cure under § 554.2508(2). Cf. Tiger Motor Co. v. McMurtry, 284 Ala. 283, 224 So.2d 638 (1969).

In many respects, this case is similar to Pew Co. v. Karley & Titsenor, 168 Iowa 170, 176, 150 N.W. 12, 14 (1914); Ertl Company v. Lange Plastics, 158 N.W.2d 93 (Iowa 1968); Admiral Plastics Corp. v. Trueblood, Inc. (6th Cir. 1971), 436 F.2d 1335; and Pfaudler Company v. American Beef Packing Company (S.D.Iowa 1972), 338 F.Supp. 701.

We hold there is no merit to plaintiff's claim the trial court's findings lack substantial evidentiary support.

II. Plaintiff's second complaint charges the trial court applied erroneous principles of law. He specifically claims the trial court "ignored" various Uniform Commercial Code provisions; that the record shows defendant accepted the molds as a matter of law under § 554.2606(1); and that the court erred in finding there had been a rejection of the molds by defendant under § 554.2602; and, finally, as to the counterclaim, that the trial court improperly applied § 554.2711 in assessing defendant's damages.

What we have already said disposes of the principal complaints raised. The findings of the trial court make the plaintiff's contentions under this division untenable. The court correctly applied the applicable Uniform Commercial Code provisions in determining plaintiff had breached the contract. The matter of defendant's counterclaim and the assessment of damages thereunder are discussed in Division III.

We find plaintiff is not entitled to relief on his second allegation of error.

■ III. This still leaves for determination defendant's cross-appeal. Defendant claims the court erred in allowing him only the return of his down payment of $6,250. He insists he is also entitled to damages for loss of profits in the amount of $9,400. He had originally laid claim to other damages, but they were abandoned on this appeal. At the same time he seeks to assert for the first time a new claim for damages, alleging he is entitled to recovery for testing expense at Janlin Plastics and for experimental work at May Plastics. Neither of these items was pled by defendant and they present nothing for review here. See Whewell v. Dobson, supra, 227 N.W.2d at 115.

We also agree with the trial court that defendant failed to establish his claim for loss of profits.

Defendant claims damages for profits based upon a contract to sell 5,000,000 of the containers at $15.30 per thousand while he had another contract for the manufacture of these items at $13.42 per thousand. This difference of $1.88 per thousand amounts to $9,400 on the manufacture and sale of 5,000,000 of the containers.

■ Of course, defendant has the burden to prove his loss by a preponderance of the evidence. Once more we look to the Uniform Commercial Code, § 554.2711, which says:

"Where the seller fails to make delivery or repudiates or the buyer rightfully rejects or justifiably revokes acceptance then * * * the buyer may cancel and * * * may in addition to recovering so much of the price as has been paid * * (b) recover damages for nondelivery as provided in this Article (§ 554.2713)."

§ 554.2713 provides:

"(1) * * * the measure of damages for non-delivery or repudiation by the seller is the difference between the market price at the time when the buyer learned of the breach and the contract price *together with any incidental and consequential damages* provided in this Article (§ 554.2715), *but less expenses saved in consequence of the seller's breach.*" (Emphasis added.)

The following measure of damages is set out in § 554.2715:

" * * * (2) Consequential damages resulting from the seller's breach include (a) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; * * * "

■ In considering the cross-appeal, we hold the trial court correctly found defendant had failed to establish consequential damages in the form of lost profits. The only testimony related to the cost of procuring the items and the price for which they were to be sold. While lost profits are recoverable as damages under the above statute, defendant failed to show the loss could not have been prevented by cover. See U.C.C., Comment 5, § 554.2713 and U.C.C., Comment 2, § 554.2715. See Whewell v. Dobson, supra, 227 N.W.2d at 115, for effect of U.C.C. comment.

Further, there is no proof of the expenses saved as a consequence of the plaintiff's breach. § 554.2713(1). See Orkin Exterminating Co., Inc. v. Burnett, 160 N.W.2d 427, 429, 430 (Iowa 1968). In *Orkin* plaintiff, in proving loss of profits, produced evidence as to operational costs, expenses chargeable to servicemen, including salary, commissions, direct automobile expense, meals, motel, travel expenses and supplies. We said:

"The question is the sufficiency of the evidence to enable the finder of fact to arrive at a dollar amount [for loss of profits]."

■ Here, defendant's loss of profits resulting from plaintiff's breach would not be the difference between the cost price and the sale price of the finished containers. Such "profit" must be reduced by the cost of doing business attributable to that item to arrive at defendant's real loss. Defendant failed to make that showing. We again quote from *Orkin* (160 N.W.2d at 430):

"Courts have recognized a distinction between proof of the fact that damages have been sustained and proof of the amount of those damages. If it is speculative and uncertain whether damages have been sustained, recovery is denied. If the uncertainty lies only in the amount of damages, recovery may be had *if there is proof of a reasonable basis from which the amount can be inferred or approximated.* Citations.

" * * * *

"We believe the evidence here was sufficient to enable the fact finder to approximate the monetary damage sustained by plaintiff. The evidence as to the amount of plaintiff's business which transferred to defendant was definite. *The evidence of the cost of producing that amount of sales was reasonably certain.*" (Emphasis supplied.)

In the present case, we hold the trial court was correct in finding there was no reasonable basis upon which to determine what, if any, loss of profits defendant suffered.

We hold defendant's damages on his counterclaim were properly limited to return of the contract payment he had made.

IV. For the reasons stated in Divisions I, II, and III, we affirm on both appeals.

Affirmed on both appeals.