Sandra Maureen BUCHHOP, as Executor of the Estate of David Donald Buchhop, Deceased, Plaintiff,

v.

GENERAL GROWTH PROPERTIES AND GENERAL GROWTH MANAGEMENT CORPORATION, Appellant and Defendant Cross-Petitioner,

v.

DAVID B. CHESKIN & COMPANY, Appellee and Defendant on Cross-Petition.

No. 2–56744.

Supreme Court of Iowa.

Nov. 12, 1975.

James R. Snyder and William H. Carmichael, of Simmons, Perrine, Albright & Ellwood, Cedar Rapids, for appellant.

John D. Randall, Cedar Rapids, for appellee.

Heard by MOORE, C. J., and MASON, REYNOLDSON, HARRIS and McCORMICK, JJ.

REYNOLDSON, Justice.

This appeal concerns the jurisdictional reach of certain Iowa statutes providing for service on foreign corporations. Defendant cross-petitioners General Growth Properties and General Growth Management Corporation (General Growth) challenge a district court ruling sustaining the special appearance of cross-petition defendant, David B. Cheskin & Company (Cheskin), an Illinois Corporation. We affirm.

The underlying action was brought by the executor of David Donald Buchhop's estate for wrongful death damages. Her petition alleged Buchhop's death on October 30, 1971 was caused by freon gas which escaped from a defectively designed, installed or maintained air conditioning unit located in a basement of General Growth's Lindale Plaza Shopping Center at Cedar Rapids, Iowa.

General Growth obtained permission to bring in Cheskin as third-party defendant. Its cross-petition asserted Cheskin and Bernard Greenbaum & Associates (another Illinois corporation), as architects and engineers, designed and constructed the shopping center under a contract with the first owner, Lindale Plaza, Inc. It was further alleged Lindale Plaza, Inc. conveyed to Cedar Rapids Lindale, Inc. which conveyed to General Growth. The cross-petition contained the usual allegations to support its prayer for contribution or indemnity, asserting Cheskin's faulty design of the air conditioning and heating system, and its failure to supervise, instruct and warn.

Cheskin never attempted to obtain a certificate of authority to transact business in Iowa. General Growth sought to obtain jurisdiction of Cheskin by serving the notice and related papers on the Iowa Secretary of State pursuant to §§ 494.2(6) and 496A.112, The Code. It is agreed the procedural steps required by those statutes were properly taken. As above noted, there followed Cheskin's special appearance which was presented to district court on the papers filed, including affidavits and answers to interrogatories.

Cheskin contends the above statutes employed to obtain jurisdiction were not applicable because it was neither authorized to transact business in Iowa nor did it in fact transact business so as to be subjected to the reach of those code provisions under applicable case law. General Growth asserts Cheskin actually transacted business in Iowa, failed to obtain the required authority, and falls within the sweep of our decisions which would forbid it to assert such failure as a jurisdictional defense.

In the course of this appeal Cheskin filed a motion to dismiss on the ground General Growth had settled and compromised plaintiff's claim, therefore would not be held liable to plaintiff and consequently the issues raised by its cross-petition for contribution or indemnity were moot. General Growth's resistance admitted the compromise but asserts Cheskin, upon request, refused to participate in the payment to plaintiff and in any event the unchallenged settlement agreement (attached to the resistance) expressly reserved cross-petitioner's rights against Cheskin for contribution or indemnity.

I. We dispose of this motion first. General Growth's settlement of the underlying controversy instead of awaiting judgment would not, of course, defeat its right to seek indemnity or contribution from Cheskin. *Ke-Wash Company v. Stauffer Chemical Company*, 177 N.W.2d 5, 10 (Iowa 1970); *Federated Mut. Imp. & H. Ins. Co. v. Dunkelberger*, 172 N.W.2d 137, 143 (Iowa 1969). In general, an action is moot if it no longer presents a justiciable controversy because the issues involved have become academic or nonexistent. *Board of Dir. of Ind. Sch. Dist. of Waterloo v. Green*, 259 Iowa 1260, 1264, 147 N.W.2d 854, 856 (1967). Assuming plaintiff's petition has been dismissed, the controversy

between General Growth and Cheskin is still extant. We overrule the motion to dismiss. See *Cooley v. Ensign-Bickford Company*, 209 N.W.2d 100, 102 (Iowa 1973).

II. In resolving the substantive issue, we first isolate and remove from controlling consideration § 617.3, The Code, which provides in pertinent part:

"617.3 Foreign Corporations or nonresidents contracting or committing torts in Iowa.

\*     \*     \*

If a foreign corporation makes a contract with a resident of Iowa to be performed in whole or in part by either party in Iowa, or if such foreign corporation commits a tort in whole or in part in Iowa against a resident of Iowa, such acts shall be deemed to be doing business in Iowa by such foreign corporation for the purpose of service of process or original notice on such foreign corporation under this section, and, if the corporation does not have a registered agent or agents in the state of Iowa, shall be deemed to constitute the appointment of the secretary of state of the state of Iowa to be its true and lawful attorney upon whom may be served all lawful process or original notice    \*    \*    \*."

The above concept first appeared in § 617.3 by virtue of a 1961 amendment. 59th G.A., Ch. 287, § 1. The enactment, devoid of provisions for due process requirements of reasonable notice and opportunity to be heard, was open to serious constitutional challenge. See *Marshfield Homes, Inc. v. Eichmeier*, 176 N.W.2d 850, 852 (Iowa 1970); Note, "Some Problems Under Iowa's Judicial Jurisdiction Statutes", 48 Iowa L.Rev. 968, 978–979 (1963). In 1963 the 1961 provision was repealed and a substitute enacted which contained notice and hearing provisions. 60th G.A., Ch. 325, § 1.

In the appeal *sub judice* all pertinent conduct of Cheskin occurred before 1961. This is the apparent reason General Growth neither asserts its notice was served pursuant to § 617.3 nor asks us to overrule our decisions holding the statute does not operate retroactively, *Chrischilles v. Griswold*, 260 Iowa 453, 150 N.W.2d 94 (1967); *Krueger v. Rheem Manufacturing Company*, 260 Iowa 678, 149 N.W.2d 142 (1967), and that the crucial consideration is the time of the non-resident's relevant act. *Marshfield Homes, Inc. v. Eichmeier*, supra at 852–853; *Schnebly v. St. Joseph Mercy Hosp. of Dubuque, Iowa*, 166 N.W.2d 780, 784 (Iowa 1969); *Snakenburg v. Jason Mfg., Inc.*, 261 Iowa 1083, 1087, 157 N.W.2d 110, 112 (1968).

General Growth argues jurisdiction over Cheskin was obtained by service of process through the secretary of state under either § 494.2(6) or § 496A.112, or both. Chapter 494, The Code, is entitled "Permits to Foreign Corporations". Section 494.1 requires a corporation desiring "to transact business in this state" to file application for permit with the secretary of state. Section 494.2 is entitled "Details of application—secretary of state as process agent". Subsection 6 thereof requires the applying corporation to file a certified copy of its resolution giving the name and address of its registered agent for service,

"\*    \*    \* [f]ailing which    \*    \*    \* service of such process may then be made upon said corporation through the secretary of state    \*    \*    \*."

The "Iowa Business Corporation Act" first appeared in 1959 as Chapter 321, Acts of the 58th General Assembly, and is now designated as chapter 496A, The Code. Section 496A.112 contains, *inter alia*, provisions similar to those in § 494.2(6):

"*496A.112 Service of process on foreign corporation.* Each registered agent so appointed by a foreign corporation authorized to transact business in this state shall be an agent of such corporation upon whom any process, notice or demand required or permitted by law to be served upon the corporation may be served.

Whenever a foreign corporation authorized to transact business in this state

shall fail to appoint or maintain a registered agent in this state, * * * or whenever the certificate of authority of a foreign corporation shall be suspended or revoked, then the secretary of state shall be an agent of such corporation upon whom any such process, notice or demand may be served."

The Iowa Business Corporation Act, § 496A.120, The Code, imposes sanctions on foreign corporations transacting business without a certificate of authority. Until stricken by amendment in 1963 (60th G.A., Ch. 287, § 5) the last sentence of § 496A.120 provided:

"If any foreign corporation shall transact business in this state without a certificate of authority, it shall by transacting such business be deemed thereby to have appointed the secretary of state its attorney for service of process."

■■■■ General Growth argues without great optimism this language should be resurrected and applied retroactively. Of course the term "transact business" in the above provision requires the same extensive activities the term invokes wherever it is found in chapter 496A. See *Hill v. Electronics Corporation of America*, 253 Iowa 581, 587, 113 N.W.2d 313, 317 (1962); Comment, 28B I.C.A., pp. 110–114. But in any event, our relevant rule holds when a law is repealed the rescinded act is operationally deemed never to have existed. *Garrison v. Garrison*, 179 N.W.2d 466, 468 (Iowa 1970); 1A Sutherland, Statutory Construction § 22.36 (1972). In so ruling here we do not interpret § 4.13, The Code, which was not effective until 1971.

The legislature, in repealing the above quoted provision in § 496A.120, apparently deemed it obsolete following amendments which extended the thrust of § 617.3.

Thus when confronted with the issue raised by Cheskin's special appearance, trial court noted Cheskin had never been granted a permit under chapter 494 nor a certificate of authority to transact business under chapter 496A and therefore held this for-

eign corporation was not amenable to process under § 494.2(6) or § 496A.112. It concluded because General Growth did not purport to acquire jurisdiction by § 617.3 service, the special appearance should be sustained.

The ruling below did not refer to an issue General Growth raises here: that because Cheskin was in fact transacting business in Iowa within the meaning of chapters 494 and 496A, The Code, under our applicable rule it is conclusively presumed to have fulfilled statutory requirements, including appointment of the secretary of state as its agent for service of process. *Electrical Equipment Company v. Hamm*, 217 F.2d 656, 659 (8 Cir. 1954); *Darling Stores Corporation v. Young Realty Co.*, 121 F.2d 112, 116 (8 Cir.), cert. denied, 314 U.S. 658, 62 S.Ct. 111, 86 L.Ed. 527 (1941); *Flinn v. Western Mut. Life Ass'n*, 187 Iowa 507, 514–515, 171 N.W. 711, 713 (1919); *Sparks v. National Masonic Acc. Ass'n*, 100 Iowa 458, 466, 69 N.W. 678, 681 (1896).

■■■■ The absence of complaint by Cheskin that this issue was not raised below, and the appearance of an amendment to the cross-petition which alleges Cheskin was transacting business in Iowa although not licensed to do so, influences us to assume this issue was properly presented to district court. We therefore consider it here. We may sustain trial court's conclusion without accepting its reasoning; a ruling which is proper on another ground should not be disturbed on appeal. *Dealers Warehouse Co. v. Wahl & Associates*, 216 N.W.2d 391, 394 (Iowa 1974); *Van Hosen v. Bankers Trust Company*, 200 N.W.2d 504, 509 (Iowa 1972).

Thus we examine the activity of Cheskin in Iowa, measuring it on the same scale the court would employ if the state were attempting to force this foreign corporation to secure a certificate of authority to transact business in Iowa under chapter 496A, The Code. We do not examine Cheskin's conduct to determine if it rises only to the

minimum contacts standard of *International al Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) which affects the jurisdictional reach of § 617.3, The Code. See *McGee v. International Life Insurance Company*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); *Creative Commun. Consult. v. Byers Transp.*, 229 N.W.2d 266 (Iowa 1975); *Douglas Mach. & Eng. v. Hyflow Blanking Press*, 229 N.W.2d 784 (Iowa 1975); *Hayes v. Hettinga*, 228 N.W.2d 181 (Iowa 1975); *Edmundson v. Miley Trailer Co.*, 211 N.W.2d 269 (Iowa 1973); *Rath Packing Co. v. Intercontinental Meat Traders, Inc.*, 181 N.W.2d 184 (Iowa 1970).

The facts bearing on this issue are virtually uncontroverted in the excellent briefs filed by both litigants.

General Growth, asserting Cheskin was transacting business in Iowa, relies on the circumstances that in 1955 Cheskin orally contracted with Greenbaum (the prime mover and developer) to structurally design the Merle Hay Mall in Des Moines. It was at this time that David Cheskin, president and principal stockholder of Cheskin, registered as an engineer in Iowa pursuant to chapter 114, The Code. David Cheskin made six full-day trips to Des Moines to observe the progress of that project. In 1957 Cheskin orally contracted with Greenbaum to design five buildings in the Lindale Plaza Shopping Center at Cedar Rapids. Again David Cheskin came to Iowa on six different days to observe the project construction. On December 19, 1960, Cheskin issued certificates of satisfactory completion to eight Iowa tenants in the plaza. Cheskin of course knew the plans it prepared were to be used in Iowa construction. On the two projects, it received $109,000 in gross income for services.

Cheskin, asserting it was not "transacting business" in Iowa in a Code chapter 494 or 496A sense, points out it is an Illinois corporation with a single place of business in Illinois. It made a contract with another Illinois corporation to draft plans in Illinois. It did not enter into any contract to perform services for any Iowa customer.

Cheskin points out it has never commenced legal action in Iowa, was never a defendant in Iowa litigation, never paid taxes in Iowa, and never owned or leased property in Iowa. No person in Iowa has been indebted to Cheskin, and it has neither had employees or agents in Iowa nor solicited business in this state.

Our prior decisions furnish guidance here. In *Mayer v. Wright*, 234 Iowa 1158, 15 N.W.2d 268 (1944) the foreign corporation (Dr. Pepper Company) owned and manufactured a secret syrup formula. It licensed bottlers in Iowa. While Dr. Pepper Company had no selling agents or display rooms in Iowa, it had advisory representatives in Iowa temporarily at infrequent intervals to assist in sale and promotion activities. Our *Mayer* opinion, 234 Iowa at 1163, 15 N.W.2d at 271, approvingly quoted the definition of doing or transacting business found in *People's Tobacco Co. v. American Tobacco Co.*, 246 U.S. 79, 87, 38 S.Ct. 233, 235, 62 L.Ed. 587, 590 (1918):

> "[T]he business must be of such nature and character as to warrant the inference that the corporation has subjected itself to the local jurisdiction, and is by its duly authorized officers or agents present within the state or district where service is attempted."

This court held trial court was right in sustaining the special appearance filed by Dr. Pepper Company.

The occasional solicitation in Iowa of orders for grave memorials by an agent of a South Dakota corporation was held insufficient to constitute doing business in *Dorsey v. Anderson*, 222 Iowa 917, 270 N.W. 463 (1936). In *Joseph T. Ryerson & Son v. Schraag*, 211 Iowa 558, 229 N.W. 733 (1930), the Missouri corporation subcontracted with an Illinois corporation to furnish and deliver in Iowa steel for a school construction. Defending a suit in Iowa for the price, the principal contractor, a Missouri resident, claimed the subcontractor was a foreign corporation doing business in Iowa without

a license, and could not maintain such action. We held the steel delivery was merely incidental to the business in which the corporation was engaged and did not constitute doing business in Iowa.

This court held the line was crossed in *American Asphalt Roof Corporation v. Shankland*, 205 Iowa 862, 219 N.W. 28 (1928). There a Missouri corporation had for a number of years engaged in a systematic Iowa solicitation of orders by an agent followed by the delivery in Iowa of merchandise to numerous customers, both new and long-established.

█ Viewing the facts in the case before us in light of the above definition and decisions, we conclude there was no such substantial connection with Iowa as would require Cheskin to obtain a certificate of authority to transact business in this state. Therefore Cheskin cannot be conclusively presumed to have complied with the statutory requirements so as to be subjected to § 494.2(6) or § 496A.112 jurisdiction of the Iowa court by service through the secretary of state. See *Allenberg Cotton Co., Inc. v. Pittman*, 419 U.S. 20, 33, 95 S.Ct. 260, 267, 42 L.Ed.2d 195, 206 (1974) ("[A]ppellant's contacts with Mississippi do not exhibit the sort of localization or intrastate character which we have required in situations where a state seeks to require a foreign corporation to qualify to do business"); § 496A.103, The Code; 18 Fletcher, Cyclopedia of Corporations § 8712, pp. 269–270 (1969).

It follows trial court's ruling must be affirmed.

Affirmed.